672 S.E.2d 297

**Jeanne CARTWRIGHT, as Guardian and Parent of Tiffany Cartwright, a Minor Child, Plaintiff Below, Appellant**

**v.**

**Carl F. McCOMAS, M.D., Defendant Below,**

**Cabell Huntington Hospital, Defendant Below, Appellee.**

**No. 33868.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2008.

Decided Nov. 6, 2008.

**162**

Brian Alan Prim, Carl E. Hostler, Prim Law Firm, PLLC, Hurricane, Anthony J. D'Amico, Savinis, D'Amico & Kane, LLC, Pittsburgh, PA, for the Appellant.

Thomas L. Craig, Rebecca C. Brown, David D. Amsbary, Bailes, Craig & Yon, Huntington, for the Appellee, Cabell Huntington Hospital, Inc.

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary,

PER CURIAM:[1]

This case involves the appeal of Jeanne Cartwright (hereinafter "Appellant"), as guardian and mother of her minor daughter, Tiffany Cartwright (hereinafter referred to individually as Tiffany), from the July 3, 2007, order of the Cabell County Circuit Court granting summary judgment in a medical malpractice action for one of the defendants below[2] and sole appellee herein, Cabell Huntington Hospital (hereinafter "CHH"). Appellant maintains that the lower court incorrectly terminated her ostensible agency claim against CHH on the grounds that the cause of action was barred by a statutory amendment even though her daughter's right to bring suit had vested under the provisions of an earlier enacted statute. More specifically, Appellant argues that her daughter's cause of action was a vested property interest before the amendment limiting the manner in which ostensible agency suits may arise under the Medical Professional Liability Act (hereinafter "MPLA") took effect. Appellant asserts that applying the later-enacted statutory amendment so as to destroy this vested property interest violates due process guarantees of the West Virginia Constitution. Appellant further asserts that applying a later-enacted amendment of the MPLA to her daughter's ostensible agency claim is contrary to the intent of the Legislature.

Upon careful consideration of the briefs and arguments of counsel, the record accompanying the appeal, the pertinent facts and the relevant law, we reverse the order of the lower court on the basis of plain error and remand the case for reinstatement to the docket.

## I. Factual and Procedural Background

On October 5, 1999, Appellant took her then four-year-old daughter to the CHH

in light of the illness of Justice Joseph P. Albright.

2. The other defendant named in this medical malpractice suit, Carl R. McComas, M.D., reached a settlement with Appellant and is not implicated in this appeal.

emergency room. The child was experiencing progressive weakness in her legs and torso, and was incontinent. After being seen in the CHH emergency department, Tiffany was evaluated by the on-call pediatricians at the hospital. The pediatricians suspected that Tiffany might be suffering from a neurological disorder known as Guillain–Barre Syndrome and ordered a neurological consultation with Dr. Carl McComas.

Tiffany was admitted to CHH where she was received care from Dr. McComas from October 9, 1999, through October 16, 1999. Dr. McComas did not order a Magnetic Resonance Imaging (hereinafter "MRI") study for the child during this hospitalization. It was not until Dr. McComas later saw Tiffany in his office on November 8, 1999, and he ruled out Guillain–Barre Syndrome that Dr. McComas ordered an MRI of the spine. This MRI was completed on December 17, 1999, and revealed a vascular abnormality that was compressing on Tiffany's spinal cord and causing paralysis. Dr. McComas referred Tiffany to a neurosurgeon in Huntington, West Virginia, who saw the child on December 27, 1999. After seeing the neurosurgeon, Tiffany was taken to Columbus Children's Hospital by her parents for a second opinion. A second MRI was done in Columbus and Tiffany underwent surgery at Columbus Children's Hospital on December 29, 1999, to resect a hemorrhagic mass near her spinal cord.

When Tiffany was released from the Columbus Hospital on January 15, 2000, she continued to be paralyzed and incontinent.

According to the deposition of Appellant's experts, the delay in diagnosis and treatment of the child's spinal problem negated the possibility of a complete recovery, and Tiffany likely would be paralyzed and incontinent for the rest of her life.

Appellant instituted a medical malpractice action pursuant to the Medical Professional Liability Act (hereinafter "MPLA") against Dr. McComas on April 23, 2003, asserting that he deviated from the standard of care by failing to order an MRI of Tiffany's spine while she was hospitalized at CHH. She further alleged that his negligence delayed the diagnosis and treatment of the abnormality in the child's spine. On June 15, 2005, Appellant was granted leave to file an amended complaint to add CHH as a defendant. The hospital moved for summary judgment on June 4, 2007, asserting that the 2003 amendments to West Virginia Code § 55–7B–9,[3] which took effect on July 1, 2003, precluded Appellant from pursuing an ostensible agency claim against CHH under the circumstances present in this case.[4]

On July 3, 2007, the circuit court entered an order granting summary judgment in favor of CHH. The order reflects the following findings of the lower court:

> 5. No witness or treating physician named by any party to this cause of action has opined that an employee of Cabell Huntington Hospital deviated from the acceptable standard of care causing harm to Tiffany Cartwright.
>
> 6. Plaintiff has offered no evidence that employees of Cabell Huntington Hospital

---

**3.** The relevant provision of West Virginia Code § 55–7B–9 (2003) (Supp.2008) is found in subsection (g) which reads as follows:

> (g) Nothing in this article is meant to preclude a health care provider from being held responsible for the portion of fault attributed by the trier of fact to any person acting as the health care provider's agent or servant or to preclude imposition of fault otherwise imputable or attributable to the health care provider under claims of vicarious liability. *A health care provider may not be held vicariously liable for the acts of a nonemployee pursuant to a theory of ostensible agency unless the alleged agent does not maintain professional liability insurance covering the medical injury which is the subject of the action in the aggregate amount of at least one million dollars.*

Emphasis added.

**4.** CHH stated in its memorandum in support of its summary judgment motion filed on June 5, 2007, that the trial court announced to all counsel present at a hearing on January 10, 2007, that the case would proceed under the provisions of the 2003 version of the MPLA. There is no transcript of a January 10, 2007, hearing or other substantiation of such an announcement, or the reason underlying it, in the record. The only transcript in the record accompanying this appeal is that of the motion hearing held on June 21, 2007, at which the hospital's motion for summary judgment was entertained along with motions involving the other defendant.

were negligent in the care of Tiffany Cartwright.

7. Section § 55–7B–9(g) of the MPLA III,[5] states that a health care provider may not be held vicariously liable for the acts of a non-employee pursuant to a theory of ostensible agency unless the alleged agent does not maintain professional liability insurance covering the medical injury which is the subject of the action in the aggregate amount of at least one million dollars.

8. Carl McComas, M.D. is an employee of Tri–State Neuroscience Center and not an employee of Cabell Huntington Hospital.

9. Carl McComas maintained professional liability insurance covering the medical injury which is the subject of the Cartwright litigation in the aggregate amount of one million dollars. Therefore Cabell Huntington Hospital is not vicariously liable for the actions or omissions of Dr. McComas in this cause of action.

Appellant appealed to this Court for review of the summary judgment order, which request was granted by order dated February 28, 2008.

## II. Standard of Review

■■■ This case requires us not only to examine the propriety of a summary judgment decision but also to analyze a lower court's interpretation of a statute upon which the summary judgment was based. The standard of review in both instances is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III. Discussion

Appellant raises three assignments of error. The first of these is that the trial court erred when it granted CHH's motion for summary judgment because it failed to recognize that Appellant's ostensible agency claim against CHH in a medical malpractice action is a protected property interest under the due process clause of the West Virginia Constitution. Building on this premise, Appellant's second assertion is that the decision to retroactively apply the 2003 amendments to West Virginia Code § 55–7B–9 to this case is unconstitutional because Tiffany's ostensible agency claim against CHH is a vested property interest subject to due process safeguards. The third alleged error is that the trial court's application of the 2003 version of West Virginia Code § 55–7B–9 to Tiffany's ostensible agency claim is contrary to legislative intent.

■■■ Based upon the facts and record before us, we find it unnecessary to venture into a constitutional analysis in order to resolve the matter presented. Instead we find that the lower court's summary judgment ruling represents plain error and warrants reversal on that ground. We reach this conclusion fully aware that plain error was not raised by Appellant on appeal. However, it is within the authority of this Court to "sua sponte, in the interest of justice, notice plain error." Syl. Pt. 1, in part, *State v. Myers*. 204 W.Va. 449, 513 S.E.2d 676 (1998); *accord* W.Va. R. Evid. 103(d) ("Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court."). *See also* 2A Fed. Proc., L.Ed. § 3:860 (acknowledging the power of federal courts to apply the plain error doctrine in appeals of civil as well as criminal cases).

■■■ The necessary elements of plain error are present in this case. As we reiterated in syllabus point twelve of *Keesee v. General Refuse Service, Inc.*, 216 W.Va. 199, 604 S.E.2d 449 (2004), in order

" '[t]o trigger application of the "plain error" doctrine there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the

---

5. The lower court used the term "MPLA III" when referring to the 2003 amendments to the MPLA.

judicial proceedings.' Syllabus point 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995)." Syllabus Point 7, *Page v. Columbia Natural Resources, Inc.*, 198 W.Va. 378, 480 S.E.2d 817 (1996).

We explained in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995), the reason why it is only in rare cases that the plain error doctrine is invoked and when straying from this position is necessary.

"One of the most familiar procedural rubrics in the administration of justice is the rule that the failure of a litigant to assert a right in the trial court likely will result" in the imposition of a procedural bar to an appeal of that issue. *United States v. Calverley*, 37 F.3d 160, 162 (5th Cir.1994) (en banc), *cert. denied*, 513 U.S. 1196, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995). As the United States Supreme Court stated in *United States v. Atkinson*, 297 U.S. 157, 159, 56 S.Ct. 391, 392, 80 L.Ed. 555, 557 (1936), "[t]his practice is founded upon considerations of fairness to the court and to the parties and of the public interest in bringing litigation to an end after fair opportunity has been afforded to present all issues of law and fact." The "plain error" doctrine grants appellate courts, in the interest of justice, the authority to notice error to which no objection has been made.

*Id.* at 17–18, 459 S.E.2d at 128–29. The facts of this case justify assertion of this authority, particularly because, as explained below, a fair opportunity has not been extended to protect the substantial rights of a minor child

under the law in order to properly resolve the malpractice claim raised.

The four elements necessary to apply the plain error doctrine are present in this case. The first two predicates of "plain" and "error" appear on the face of the summary judgment order and involve the date that the case was filed. The "Findings of Fact and Conclusion of Law" of the summary judgment order begins with the following findings:

1. On October 29, 2002, this case was filed against Carl McComas, M.D., under the Medical Professional Liability Act 2002 ("MPLA II").

2. The Medical Professional Liability Act 2003 ("MPLA") applies to all causes of action alleging medical professional liability which are filed on or after the first day of July two thousand three. W.Va.Code § 55–7B–1, et seq.

3. On June 15, 2005, this case was filed against Cabell Huntington Hospital, Inc., under the MPLA III.

As recounted earlier in this opinion, Appellant initially filed this case on April 23, 2003, with Dr. McComas named as the sole defendant.[6] On June 15, 2005, Appellant raised the ostensible agency claim against CHH by obtaining leave of court[7] to amend the original complaint filed on April 23, 2003, in accord with the provisions of section (a) of Rule 15 of the West Virginia Rules of Civil Procedure (hereinafter "Rule 15").[8]

Misstatements regarding filing dates of the pleadings aside, plain and reversible error exists in this case in the lower court's implicit determination that the ostensible agency claim against CHH did not relate back to the

---

6. The reference in the summary judgment order as to October 29, 2002, being the date that the original complaint was filed is apparently a typographical error. The record accompanying the appeal contains the complaint bearing the stamp of the clerk of the circuit court which clearly indicates that the complaint was filed at 10:22 a.m. on April 23, 2003.

7. No objection appears in the record to the trial court's allowing the addition of the ostensible agency claim against the hospital by amendment to the original complaint.

8. Rule 15(a) provides:
*Amendments.*—A party may amend the party's pleading once as a matter of course at any

time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

date that the original complaint was filed in 2003.

 We have long recognized that the problems associated with amendments to complaints relating back to the date of the original pleading arise when the amendments are filed outside of the limitations period. *See, e.g. Plum v. Mitter,* 157 W.Va. 773, 204 S.E.2d 8 (1974). The operation of the components of Rule 15 regarding how amendments to complaints are treated was addressed in *Peneschi v. National Steel Corporation,* 170 W.Va. 511, 295 S.E.2d 1 (1982). In *Peneschi,* this Court explained that the general objective of Rule 15 of allowing the liberal use of amendments to implement the policy of encouraging litigation on the merits was necessarily tempered by the provisions of Rule 15(c)[9] in order to give deference to the equally important purposes served by a statute of limitations. *Id.* at 523, 295 S.E.2d at 13. Thus, amendments filed after a statute of limitations period has expired require courts to consider additional factors when determining whether the amendments relate back to the original filing date. *See, e.g.* Syl. Pt. 4, *Brooks v. Isinghood,* 213 W.Va. 675, 584 S.E.2d 531(2003) (listing considerations under Rule 15(c)(3) governing when an amendment changing a defendant or naming a new defendant will relate back to the date of the original complaint). No such considerations or conditions are relevant in the case sub judice because the statute of limitations governing the cause of action of a minor had not expired at the time the amended complaint was filed.

This leads to our discussion of the final two components of plain error present in the facts of the case before us that: Tiffany has a substantial right in pursuing her claim against the hospital, and the failure to act to preserve the child's right would call into question the fairness and integrity of the judicial process.

The statute of limitations governing medical malpractice actions is set forth in West Virginia Code § 55–7B–4 (1986) (Repl.Vol. 2000), which in pertinent part provides:

(a) A cause of action for injury to a person alleging medical professional liability against a health care provider arises as of the date of injury, except as provided in subsection (b) of this section, and must be commenced within two years of the date of such injury, or within two years of the date when such person discovers, or with the exercise of reasonable diligence, should have discovered such injury, whichever last occurs: Provided, That in no event shall any such action be commenced more than ten years after the date of injury.

(b) A cause of action for injury to a minor, brought by or on behalf of a minor who was under the age of ten years at the time of such injury, shall be commenced within two years of the date of such injury, or prior to the minor's twelfth birthday, whichever provides the longer period.

The enlarged filing period the Legislature has provided for minors under the age of ten at the time of injury is unquestionably applicable to Tiffany since she was only four years old when the alleged acts of malpractice occurred in 1999. Thus, under the terms of the statute, the limitations period for filing suit did not expire until Tiffany's twelfth birthday in 2007. In the absence of any other reason reflected in the record, since the original complaint was filed on April 23, 2003, and the amended complaint was filed on June 15, 2005, the statute of limitations restrictions imposed by Rule 15(c) with regard to the amendment of a complaint by adding a new

---

**9.** The text of Rule 15(c) provides in its entirety:

(c) *Relation Back of Amendments.*—An amendment of a pleading relates back to the date of the original pleading when:

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action; or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; or

(3) the amendment changes the party or the naming of the party against whom a claim is

asserted if the foregoing paragraph (2) is satisfied and, within the period provided by Rule 4(k) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have brought against the party.

defendant are irrelevant and inapplicable. Consequently, in furtherance of the general policy behind Rule 15—promoting litigation on the merits—the amendment to the complaint filed by leave of court on June 15, 2005, naming CHH in the malpractice suit on the theory of ostensible agency, relates back to the date on which the original complaint was filed. The expanded period of time the Legislature has expressly extended to minors for filing malpractice claims is a substantial right we simply cannot ignore.[10]

The Legislature expressly and unambiguously provided when the 2003 amendments to the MPLA are to be applied. As stated in West Virginia Code § 55–7B–10(b) (2003) (Supp.2008), "The amendments to this article provided in Enrolled Committee Substitute for House Bill No. 2122 during the Regular Session of the Legislature, two thousand three, apply to all causes of action alleging medical professional liability which are filed on or after the first day of July, two thousand three." We are undoubtedly bound to adhere to such a direct expression of legislative intent.[11]

■ In order to preserve the legislatively established right extended to minors under the age of ten to file claims beyond the usual two year statute of limitations and to maintain the fairness and integrity of the judicial process under the facts of this case, the summary judgment order of the trial court must be reversed and the case be permitted to proceed under the provisions of the MPLA in effect at the time the original complaint was filed on April 23, 2003.[12] This result is in keeping with our finding that "an error may be plain under existing law, which means that the plainness of the error is predicated upon legal principles that the litigants and trial court knew or should have known at the time of the prosecution [of the case]." Syl. Pt. 6, in part, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).

### IV. Conclusion

The elements of plain error are present in the facts of this case since there is an error which is plain that affects the substantial rights of a party and seriously affects the fairness and integrity of the judicial process. Accordingly, deviation from our customary reluctance to apply the plain error doctrine is clearly warranted.[13]

In consideration of the foregoing, the July 3, 2007, summary judgment order of the Cabell County Circuit Court is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.

---

10. Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

11. *Id.* at n. 10.

12. *See Acts of the West Virginia Legislature 1986*, 1st Ex. Sess., c. 17.

13. Because this case was decided on grounds other than substantive due process, we did not reach the issue raised by Appellant regarding when a medical malpractice action of a minor accrues.