**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **B.C., E.C., and G.C.**

**No. 18-0933** (Mercer County 17-JA-083-MW, 17-JA-084-MW, and 17-JA-085-MW)

# MEMORANDUM DECISION

Petitioner Grandmother S.L., by counsel Michael A. French, appeals the Circuit Court of Mercer County's September 13, 2018, order denying her permanent placement of B.C., E.C., and G.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Raeann Osborne, filed a response on behalf of the children in support of the circuit court's order. Respondent foster parent K.C., by counsel John E. Williams Jr., filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in removing the children from her custody and in denying her permanent placement of the children.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the circuit court erred in removing the children from petitioner's custody on the basis of insufficient evidence, without appointing her an attorney, and without affording her an opportunity to be heard. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate and remand the matter.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]On February 2, 2019, this Court received a pro se letter from petitioner seeking the removal of the guardian ad litem from this appeal. Petitioner is represented by counsel. Therefore, in accordance with Rule 4(b) of the West Virginia Rules of Appellate Procedure, we decline to address petitioner's pro se submission.

In March of 2017, petitioner was granted temporary guardianship of B.C., E.C., and G.C.[3] Later that month, the DHHR filed an abuse and neglect petition alleging that the parents of the children were abusing controlled substances and could not adequately parent the children. According to the DHHR, when the children were removed from their parents, they were suffering from various physical ailments that required constant oversight by their physicians. The petition did not include allegations against petitioner, nor was she named as a party or appointed counsel. However, the DHHR did allege that petitioner was the children's legal guardian and caring for the children at the time the petition was filed.

In October of 2017, the circuit court held an emergency placement hearing following the removal of the children from petitioner's home. According to the DHHR and guardian, petitioner purposely failed to take the children to their required medical appointments and failed to reschedule those appointments. Petitioner was not present or represented by counsel during this hearing. The DHHR did not file an amended petition to include allegations against petitioner or present evidence regarding the allegations. Nevertheless, the circuit court approved the transfer of custody of the children to the maternal aunt. Thereafter, in February of 2018, the guardian filed a motion to remove C.C. from petitioner's custody on the basis that she failed to follow a court order to cooperate with the DHHR and the guardian. The circuit court appointed counsel to represent petitioner.

In May of 2018, the circuit court heard evidence regarding the guardian's motion to remove C.C. from petitioner's custody.[4] The circuit court ruled that a multidisciplinary team ("MDT") meeting was in the best interest of all the children and ordered petitioner to participate in the meeting. The circuit court held a review hearing in June of 2018 and was advised that petitioner was "making progress." The DHHR proposed the maternal aunt's custody as permanent placement for B.C., E.C., and G.C. Petitioner filed a motion that opposed the DHHR's proposed permanency plan and requested for B.C., E.C., and G.C. to be placed in her custody permanently.

In August of 2018, the circuit court held a dispositional hearing and the parents relinquished their parental rights to all of the children. Afterwards, the circuit court heard argument regarding the permanent placement of B.C., E.C., and G.C. The guardian expressed her support of the DHHR's permanency plan and moved to transfer the custody of C.C. to the maternal aunt in order to avoid sibling separation. Ultimately, the circuit court ordered that petitioner participate in a home study, ordered that B.C., E.C., and G.C. would remain with their maternal aunt and took the custody of C.C. under advisement pending petitioner's home study.

---

[3]Petitioner was appointed legal guardian of C.C., a sibling of these children in 2012. C.C. has remained in petitioner's care throughout these proceedings.

[4]Transcripts of this hearing were not provided on appeal.

The circuit court memorialized its decision in its September 13, 2018, order. Petitioner now appeals that order.[5]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in removing the children from her custody because the DHHR failed to establish that the children were in imminent danger while in her care. We agree with petitioner for reasons more fully detailed below. Additionally, as we find cause to remand this proceeding on the basis of petitioner's first assignment of error, we decline to address petitioner's second assignment of error at this time.[6]

West Virginia Code § 49-4-602(c) describes the procedure for removal of a child during the pendency of an abuse and neglect case and provides as follows:

> (c) Emergency removal by department during pendency of case. – Regardless of whether the court has previously granted the department care and custody of a child, if the department takes physical custody of a child during the pendency of a child abuse and neglect case (also known as removing the child) due to a change in circumstances and without a court order issued at the time of the removal, the department must immediately notify the court and a hearing shall take place within ten days to determine if there is imminent danger to the physical well-

---

[5]The parents voluntarily relinquished their parental rights to the children. According to the parties, the permanency plan for the children is adoption in their current relative foster placement with respondent K.C.

[6]Petitioner argues that the circuit court also erred in denying her motion for permanent custody of B.C., E.C., and G.C.

3

being of the child, and there is no reasonably available alternative to removal of the child. The court findings and order shall be consistent with subsections (a) and (b) of this section.

Upon our review of the record, we note that the circuit court did not specifically find there was "imminent danger" to the children in petitioner's care. Instead, the circuit court found "[petitioner] failed to take the children for their doctor appointments, and the children were removed due to medical neglect." Yet, the transcript of that proceeding shows that this finding is not based on any evidence. The DHHR may only remove a child prior to the filing of a court order when a case worker has probable cause to believe the children may suffer additional abuse and neglect before a court order could be obtained, then the circuit court must later ratify the emergency removal. W. Va. Code § 49-4-303(2). Therefore, the DHHR needed to prove that there was probable cause that the children were in imminent danger of additional abuse and neglect, and it failed to present any evidence in support of this burden. Despite this low evidentiary burden, counsel for the parties only proffered information to the circuit court and did not offer any testimony or documentation in support of their allegations. With no support for the circuit court's findings available in the record, we conclude that these findings are clearly erroneous and must be vacated and remanded.

Moreover, the DHHR's failure to name petitioner as a party in the initial petition, and the circuit court's error in not requiring the same, rendered her uninformed of the proceedings. Thus, petitioner had no notice of these proceedings and, consequently, was not afforded an opportunity to be heard as required by West Virginia Code § 49-4-601 and this Court's prior holdings. West Virginia Code § 49-4-601(h) provides as follows:

> Right to be heard. – In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses. Foster parents, preadoptive parents, and relative caregivers shall also have a meaningful opportunity to be heard.

As this Court has previously discussed, West Virginia Code § 49-4-601(h) establishes a "two-tiered framework." *State ex rel. H.S. v. Beane*, 240 W. Va. 643, 647, 814 S.E.2d 660, 664 (2018). Parties having "custodial or other parental rights or responsibilities" are entitled to *both* "a meaningful opportunity to be heard" *and* "the opportunity to testify and to present and cross-examine witnesses." W. Va. Code § 49-4-601(h). Moreover, for purposes of this statute, the term "custodial" refers to a person who became a child's custodian "*prior* to the initiation of the abuse and neglect proceedings[.]" *Beane*, 240 W. Va. at 647, 814 S.E.2d at 664 (quoting *In re Jonathan G.*, 198 W. Va. 716, 727, 482 S.E.2d 893, 904 (1996)) (emphasis added). Further, we have explained that "[a] person 'who obtains physical custody *after* the initiation of abuse and neglect proceedings – such as a foster parent – does not enjoy the same statutory right of participation as is extended to parents and *pre-petition custodians*.'" *Beane*, 240 W. Va. at 648, 814 S.E.2d at 665 (quoting *State ex rel. R.H. v. Bloom*, No. 17-0002, 2017 WL 1788946 at *3 (W. Va. May 5, 2017)(memorandum decision)) (emphasis added). In *R.H.*, we concluded that a grandfather who did not have a pre-petition custodianship of two of his grandchildren could not call and question witnesses – but because the children were placed in his care during the abuse

and neglect proceeding, he did have the right to be heard regarding the children's interests. This case is the converse of *R.H.* Petitioner was appointed as temporary guardian of B.C., E.C., and G.C. in March of 2017 before the petition was filed, and she was appointed permanent guardian of C.C. in 2012. Accordingly, petitioner was entitled to both a meaningful opportunity to be heard and the opportunity to testify and present and cross-examine witnesses.

Petitioner should have been appointed counsel upon the filing of the initial petition pursuant to West Virginia Code § 49-4-601(f)(2). Additionally, West Virginia Code § 49-4-601(f)(1) provides that

> [i]n any proceeding under this article, the child, his or her parents and his or her *legally established custodian* or other persons standing in loco parentis to him or her has *the right to be represented by counsel at every stage of the proceedings* and shall be informed by the court of their right to be so represented and that if they cannot pay for the services of counsel, that counsel will be appointed.

(Emphasis added). At the outset of these proceedings, petitioner was the legal guardian of four of the infant respondents named in the petition. Clearly, petitioner was entitled to counsel.[7]

Although petitioner does not take issue with the circuit court's failure to provide her counsel, "it is within the authority of this Court to 'sua sponte, in the interest of justice, notice plain error.'" *Cartwright v. McComas,* 223 W. Va. 161, 164, 672 S.E.2d 297, 300 (2008) (quoting syl. pt. 1, in part, *State v. Myers,* 204 W. Va. 449, 513 S.E.2d 676 (1998)). "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). The circuit court's failure to appoint counsel and grant petitioner an opportunity to be heard during the October of 2017 hearing plainly violates the West Virginia Code sections cited above. Further, that error eliminated petitioner's ability to contest respondents' allegations, which the circuit court relied on to ratify the removal of the children from her care. Petitioner's grandchildren, over whom she exercised legal guardianship, were removed from her care without any opportunity to advocate or any recourse other than this appeal.

We have previously held that

---

[7]In addition to requiring appointment of counsel at the outset of the proceedings, West Virginia Code § 49-4-601(f)(2) also provides that representation by appointed counsel "may only continue after the first appearance if the parent or other persons standing in loco parentis cannot pay for the services of counsel." Although petitioner's financial status is unknown, petitioner must be provided counsel for the hearing on whether imminent danger existed to the children at the time of removal and thereafter if the circuit court determines that she cannot pay for the services of counsel.

"[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). As the process for child abuse and neglect proceedings was substantially disregarded by the circuit court's failure to abide by the above mentioned statutes, the circuit court's September 13, 2018, order denying petitioner permanent placement and its November 6, 2017, order ratifying the emergency removal of B.C., E.C., and G.C. must be vacated and the matter remanded. This Court orders the circuit court to hold an evidentiary hearing on whether imminent danger existed to B.C., E.C., and G.C. at the time that they were removed from petitioner's care. Petitioner must be provided ten days notice of the hearing, represented by counsel, and provided a meaningful opportunity to be heard, to testify, and present and cross-examine witnesses as required by the West Virginia Code sections cited above.

Finally, according to the parties, the circuit court will hold a contested permanency hearing regarding the placement of C.C. However, we note that no petition filed in the proceedings below has contained formal allegations against petitioner. Petitioner has express legal guardianship rights to C.C. pursuant to a 2012 family court order. Although West Virginia Code § 49-4-604(b)(6) anticipates the termination of parental, custodial, and *guardianship* rights, such termination is predicated on a circuit court's finding that the child is abused or neglected and a finding that the respondent is an abusing parent.[8] The DHHR has not alleged in a petition that petitioner has abused or neglected the children, including C.C., let alone presented evidence regarding petitioner's care of C.C., and she has not been adjudicated as an abusing parent in relation to any of the children in the underlying proceeding. Therefore, we caution the circuit court against altering the permanent placement of C.C., if such alteration would require the termination of petitioner's guardianship rights, without affording petitioner due process under Chapter 49 of the West Virginia Code and the relevant rules of procedure.

For the foregoing reasons, we vacate the circuit court's September 13, 2018, order denying petitioner permanent placement of B.C., E.C., and G.C. and the circuit court's November 6, 2017, order ratifying the emergency removal of these children from petitioner's care and remand this matter for further proceedings consistent with the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and Chapter 49 of the West Virginia Code.[9]

---

[8]West Virginia Code § 49-1-201 provides that an abusing parent means "a parent, guardian, or other custodian . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect."

[9]As this memorandum decision vacates the order removing B.C., E.C., and G.C. from petitioner's custody, it is necessary for these children to be returned to their legal guardian.

(continued . . .)

The circuit court is hereby ordered to hold the appropriate hearings and issue a final order in this case within sixty days. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded.

**ISSUED**:  March 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

---

However, this Court recognizes that the circuit court is in the best position to determine an appropriate schedule to transition these children back into petitioner's care. Accordingly, we instruct the circuit court to hold a hearing forthwith and determine an appropriate schedule to transition the children that is consistent with the children's best interests and this Court's prior guidance regarding gradual transitions between placements. *See In re K.E.*, 240 W.Va. 220, 228, 809 S.E.2d 531, 539 (2018) (holding that, upon this Court's reversal and remand of a circuit court's permanent placement order, a gradual transition period to a familiar placement "most effectively serves the best interests of the children"). We note that this ruling does not bar the DHHR from filing an amended petition against petitioner based on allegations of abuse or neglect either related to the conditions prior to the removal of B.C., E.C., and G.C. or upon new conduct. Additionally, this ruling does not prevent the circuit court from ratifying a subsequent removal of the children from petitioner's custody based on evidence establishing imminent danger to the children after affording petitioner notice, counsel, the opportunity to be heard, and any other rights provided by the relevant rules and statutes.