# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* C.T.-1 and C.T.-2

No. 22-0047 (Kanawha County 21-JA-167 and 21-JA-168)

## MEMORANDUM DECISION

Petitioner Mother A.T., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's December 17, 2021, order terminating her parental rights to C.T.-1 and C.T.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Jennifer L. Anderson, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period and when less restrictive alternatives were available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the governing law, the briefs, and the record presented, the Court finds that the circuit court failed to enter an order adjudicating petitioner or otherwise make any specific findings concerning petitioner's adjudication, thereby rendering the termination of petitioner's parental rights erroneous. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure, and a memorandum decision is appropriate to vacate and remand for further proceedings consistent with this decision.

In March of 2021, the DHHR filed a petition alleging that petitioner abused and neglected the children, although the record shows that approximately eleven years prior to the petition's filing the children's maternal grandmother obtained legal guardianship of C.T.-1 and exercised continuous custody of that child from that point forward. As such, the DHHR's allegations in the petition concerned petitioner's conduct regarding C.T.-2. According to the DHHR, petitioner had been recently arrested for possession with intent to deliver and DUI and had a history of other

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because both children share the same initials, they will be referred to C.T.-1 and C.T.-2, respectively, throughout this memorandum decision.

crimes. During the arrest, petitioner "realized her son [C.T.-2] wasn't with her and became inconsolable but [she] was too incapacitated to assist law enforcement in locating her child." The child was later found with a friend. According to the DHHR, the child "was cared for and didn't appear to be in any danger." The petition also alleged that petitioner engaged in extensive drug abuse, including Xanax, methamphetamine, and heroin, and left the child with an inappropriate caregiver. According to one individual, petitioner described "running drugs for her boyfriend . . . , falling asleep while caring for the infant (leaving him unsupervised around drugs), using drugs frequently, [and] allowing unknown individuals to ride in her vehicle where they proceeded to overdose." Accordingly, the DHHR alleged that petitioner abused and neglected the children.[2]

Thereafter, the court held a series of adjudicatory hearings that were continued for various reasons, including awaiting the results of petitioner's psychological evaluation and an employment obligation causing petitioner's absence. During this period, the DHHR indicated that petitioner had two negative screens but overall continued to test positive for marijuana and, on one occasion, methamphetamine. In September of 2021, the court convened another adjudicatory hearing, at which time petitioner's counsel requested another continuance because of petitioner's recent incarceration and a failure to transport her for the hearing. The court denied the motion and proceeded with adjudication.

The DHHR then presented extensive evidence concerning the conditions that necessitated the filing of the petition, including petitioner's substance abuse issues resulting in inappropriate care for at least one of the children and her threats against a caretaker, among other evidence. However, the circuit court failed to make any specific findings concerning petitioner's conduct, instead simply concluding as follows at the conclusion of the DHHR's presentation of evidence: "All right. I will find there's clear and convincing evidence that these children are abused and/or neglected as defined by the state code and move—with respect to [petitioner] and move to disposition." This constitutes the only finding the court made concerning petitioner's adjudication, as the record shows that the circuit court failed to enter an order adjudicating petitioner of either abuse or neglect. Specifically, at the subsequent dispositional hearing, the court explicitly noted that "[t]he adjudication order was not—was never done." Following the adjudicatory hearing, petitioner filed a motion for a post-adjudicatory improvement period.

In December of 2021, the court held a dispositional hearing. The DHHR presented evidence that petitioner had not been compliant with services during the proceedings. According to a DHHR employee, petitioner stopped participating in services in September of 2021, although she did test negative on two drug screens the month prior to the hearing. The DHHR worker further admitted that he had not attempted to contact petitioner since he took over her case in October of 2021.

Petitioner also testified during the hearing and indicated that upon her release from incarceration in September of 2021, she began contacting the DHHR regarding her services. However, she asserted that she was given incorrect information about the location of her drug screens, as the DHHR "gave [her] an address that they were no longer taking testing at." Petitioner

---

[2]The DHHR later filed an amended petition to include an additional adult respondent.

further testified that after her release, she submitted to substance abuse treatment and continued participating in that treatment at the time of disposition. Petitioner also explained that she had submitted to a drug screen as recently as the week prior to the hearing. Regarding missed drug screens, petitioner explained that her provider had not responded to her messages, answered her calls, or called her back. Petitioner renewed her request for an improvement period during the hearing.

At the conclusion of evidence, the court found as follows:

[A]fter hearing the testimony and reviewing all the records and taking notice of all the different proceedings that we've been through in this case, it does not appear that [petitioner]'s situation can be or will be remedied any time in the near future. The [c]ourt's also aware that she has had a long-standing drug problem and sometimes has periods of sobriety, but she is also still facing felony drug charges for possession of heroin and a firearm in Jackson County. And that termination has been requested by the State and the guardian and the [c]ourt will grant that request with respect to [both children].

Following the hearing, the court entered a dispositional order that appears to be a form with a series of boxes checked in regard to petitioner. For example, the order contained a checkmark next to the following: "That there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future, as the following [r]espondents have not made efforts to rectify the circumstances which led to the filing of this [p]etition." Under this statement, petitioner's name was written in by hand. Several other "findings" regarding petitioner were made in this manner, including that termination of her rights was necessary for the children's best interests and that there were no reasonable alternatives to termination of her rights. This stock order contained no specific findings concerning petitioner.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[3]C.T.-2 has achieved permanency in the custody of the nonabusing father. According to the guardian, the father of C.T.-1 was recently adjudicated of abandoning the child. The guardian states that C.T.-1's permanency plan is adoption in the current placement.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Upon our review, we find that it is unnecessary to address petitioner's specific assignments of error because the record is clear that the circuit court failed to enter an order adjudicating petitioner of abuse and/or neglect and also failed to make any specific findings concerning petitioner's adjudication on the record. In similar circumstances, this Court has recognized plain error upon deficiencies in abuse and neglect proceedings. *See In re Lilith H.*, 231 W. Va. 170, 180, 744 S.E.2d 280, 290 (2013) ("[T]his Court takes notice of the plain error permeating the disposition wherein the circuit court terminated the parental rights on the basis of allegations and issues which were never properly made subject of the adjudication."). In *Lilith H.*, the court noted that "[i]t is within the authority of this Court to 'sua sponte, in the interest of justice, notice plain error.'" *Id.* (quoting *Cartwright v. McComas*, 223 W. Va. 161, 164, 672 S.E.2d 297, 300 (2008)). Having recognized that it was appropriate to notice the lower court's plain error, we went on to explain that

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the . . . case [will be] remanded for compliance with that process[.]

*Id.* (*quoting* Syl. Pt. 5, in part, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001)). As more fully explained below, we conclude that the court's failure to enter an order adjudicating petitioner of either abuse and/or neglect and the failure to make specific findings regarding petitioner's adjudication on the record constitute a similar frustration or disregard of the clear language of the relevant rules and statutes such that vacation of the order on appeal is necessary.

As we have long held,

> "before a court can begin to make any of the dispositional alternatives under W.Va. Code [§ 49-4-604], it must hold a hearing under W.Va. Code [§ 49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syllabus Point 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

Syl. Pt. 3, in part, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019). Additionally, West Virginia Code § 49-4-601 sets forth the following:

> At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and *shall make findings of fact* and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, *all of which shall be incorporated into the order of the court*.

4

(Emphasis added). As set forth above, the court made no findings of fact and, instead, simply concluded that the children were abused and neglected. In other contexts of abuse and neglect proceedings, we have found such conclusory rulings insufficient. *See* Syl. Pt. 4, *In re Edward B.*, 210 W. Va. 621, 623, 558 S.E.2d 620, 624 (2001) (holding that a dispositional order was inadequate because the court "merely declare[d]" there was no reasonable likelihood that the conditions of neglect could be eliminated "without explicitly stating factual findings in the order or on the record supporting such conclusion").

Here, the record clearly demonstrates the problematic nature of such declarations in the absence of detailed factual findings, as the court's finding of abuse has no basis in the record. West Virginia Code § 49-1-201 defines "[a]bused child," in relevant part, as

> [a] child whose health or welfare is being harmed or threatened by: (A) A parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home.

The court made this finding despite the fact that there is simply no evidence in the record that petitioner either inflicted, attempted to inflict, or knowingly allowed another person to inflict any sort of injury upon the children. Accordingly, it is clear that adjudicating petitioner of abusing the children was in error. Further, we are unable to undertake a review of the appropriateness of the court's conclusion that petitioner neglected the children, given that it made no factual findings in support. *See Edward B.*, 210 W. Va. at 632, 558 S.E.2d at 631 ("Adequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court.").

This is especially true in regard to C.T.-1, who had been in the legal custody of the maternal grandmother for approximately eleven years prior to the filing of the petition in this matter. We recently had occasion to address a similar set of circumstances in *In re C.S. and B.S.*, -- W. Va. -- , -- S.E.2d --, 2022 WL 2155209 (2022). In that case, we addressed a circuit court's adjudication and subsequent termination of parental rights to a child who had resided in a legal guardianship prior to the proceedings. *Id.* at *9. Ultimately, we concluded that B.S., the child who resided outside of petitioner's home, "did not qualify as either an 'abused child' or a 'neglected child' as those terms are defined by statute." *Id.* at *11. This was due to the fact that, for the five years preceding the filing of the petition in that matter, B.S. lived outside the parents' home under a permanent legal guardianship. *Id.* We concluded that because B.S. lived outside the home with permanent legal guardians, that

> B.S.'s health and welfare were not harmed or threatened by the petitioner's drug addiction, and there is no evidence that any person inflicted abuse or neglect upon B.S. or upon another child in the home where B.S. was living. . . . Critically, the petitioner did not have custody of B.S. and could not have simply gone to the guardians' home to retrieve B.S. any time she wished. To obtain custody of B.S., the petitioner would have to file a petition to terminate the legal guardianship

5

pursuant to West Virginia Code § 44-10-3, and a court would have to grant that petition.

*Id.*

This is the exact situation present in the current matter on appeal. Here, C.T.-1 resided with the legal guardian, the maternal grandmother, for eleven years prior to the filing of the instant petition. Just as it was undisputed that the guardians in *C.S.* were nonabusing, the DHHR levied no allegations against C.T.-1's guardian in the current matter. *Id.* Further, the petition in this matter contains no specific allegations that C.T.-1 was abused or neglected and instead focused all of its allegations on petitioner's conduct concerning C.T.-2. As we have recently explained,

> [f]or a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an "abused child" or a "neglected child" as those terms are defined in West Virginia Code § 49-1-201 (2018). Pursuant to West Virginia Code § 49-4-601(i) (2019), a circuit court's finding that a child is an "abused child" or a "neglected child" must be based upon the conditions existing at the time of the filing of the abuse and neglect petition.

*Id.* at --, -- S.E.2d at --, 2022 WL 2155209 at *2, Syl. Pt. 8. Because we concluded that the court lacked subject matter jurisdiction over B.S., we ultimately concluded that it was error to terminate the petitioner's parental rights to that child. *Id.* at *11. Accordingly, it is clear that the circuit court's adjudication of petitioner in regard to C.T.-1 was erroneous and that it further lacked jurisdiction to terminate petitioner's parental rights to that child.

For the foregoing reasons, we vacate the circuit court's December 17, 2021, order terminating petitioner's parental rights and further remand the matter for the entry of an adjudicatory order with detailed findings of fact and conclusions of law sufficient to support adjudication of C.T.-2, if appropriate, and for further proceedings consistent with the applicable statutes and rules. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Vacated and remanded, with direction.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn