# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Phillip D. Tice,**
**Defendant Below, Petitioner**

**FILED**
**March 3, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)     No. 19-1117** (Randolph County 17-C-125)

**John S. Veach,**
**Plaintiff Below, Respondent**


## MEMORANDUM DECISION

Respondent John S. Veach[1] holds an express, deeded right-of-way across Petitioner Phillip D. Tice's[2] property. A 1960 agreement describes the right-of-way for a road, but the parties to that agreement did not get a survey. For approximately twenty-six years, Mr. Veach and his employee crossed Mr. Tice's property along what they thought was the right-of-way—a route that cuts through Mr. Tice's hayfield and close to a combined garage/apartment constructed around 2000. After Mr. Tice blocked that route, Mr. Veach sued for a declaration (1) of the location of the right-of-way, and (2) a prescriptive easement along the route that he had allegedly used for twenty-six years. At trial, the jury found that the right-of-way was located as Mr. Veach claimed: through Mr. Tice's hayfield and near his garage. And, the jury found that Mr. Veach had established the elements of a prescriptive easement. In the Judgment Order that followed, the circuit court ordered that the location and width of the prescriptive easement matched that of the right-of-way.

On appeal, Mr. Tice essentially argues that Mr. Veach pulled a "fast one" at trial and used evidence relevant to his prescriptive easement theory to dupe the jury into locating the right-of-way through the field and near his garage. That duplicity, Mr. Tice contends, led to jury verdicts unsupported by the evidence and a Judgment Order that is plainly erroneous. We disagree with Mr. Tice's first contention, but agree with his second. Plainly, the Judgment Order's finding that Mr. Tice holds a prescriptive easement in the same location, and of the same width, as his express, deeded right-of-way is erroneous. But, we cannot say that the evidence offered at trial of the location of that right-of-way was so insufficient as to render the verdict a manifest injustice—a very high bar set by Mr. Tice's failure to raise this objection, below. So, we affirm-in-part and reverse-in-part the circuit court's Judgment Order and remand for entry of an order consistent with this decision.

---

[1] Mr. Veach is represented by Harry A. Smith, III, Esq., Jory & Smith, L.C.

[2] Mr. Tice is represented by Braun A. Hamstead, Esq., HAMSTEAD & ASSOCIATES, L.C.

This case does not present a substantial question or law or fact.  So, resolution of this appeal by memorandum decision is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Tice and Mr. Veach own nearly contiguous tracts of real property in the Beverly District of Randolph County.  Until 1936, the properties were part of a 136-acre tract held by the Wamsley family.  A July 1936 deed severed and conveyed a 30.0262-acre portion of the Wamsley property to a predecessor in Mr. Tice's chain of title, Adam Wamsley.[3]  The July 1936 deed also excepted a right-of-way across the 30.062-acre tract for a road leading to what is now Mr. Veach's property from State Secondary Route 24.

On April 25, 1960, Owen Lutz, grantor to Mr. Veach, and Eunice McLaughlin, predecessor-in-title to Mr. Tice, formed a Right of Way Agreement in which they restated the right-of-way reserved in the July 1936 deed and attempted to define it.[4]  The agreement states that,

> [T]he private road right of way leading from State Secondary Road No. 24 shall run from said State Secondary road in a westerly direction over the driveway or lane leading to the house located on said 30.062 acre tract; thence the same shall continue in a southwesterly direction around and to the South of a tool shed now located on said premises; thence in a northwesterly direction a straight line to the line fence separating the property of the parties of the first part and the party of the second part.

We briefly describe Mr. Tice's property to put the 1960 agreement and the analysis that follows in context.[5]  A gravel driveway leading from Secondary Route 24 provides access to Mr. Tice's property.  After leaving Route 24, the driveway crosses a narrow strip of property owned by a third-party.  The driveway then crosses onto Mr. Tice's land and ascends a small hill to a flat, gravel area.  Mr. Tice's property extends to the left of the driveway, if viewed standing with one's back to Route 24.  Heading in that direction, one passes through a small orchard then reaches a property boundary shared with Mr. Walter Brown.[6]  Mr. Tice's garage sits to the left, adjacent to

---

[3] The 30.0262-acre tract was later split.  Mr. Tice took the remaining, approximately 17-acre tract.  Mr. Tice does not dispute that the right-of-way burdens his property.

[4] The agreement states that it was executed on April 25, 1950.  Mr. Veach's title expert, Terry Reed, Esq., testified that that date was a typo, and that the agreement was actually executed on April 25, 1960.  Mr. Tice did not dispute this point.

[5] In a similar fashion, the jury viewed Mr. Tice's property before hearing testimony of the parties.

[6] Mr. Brown is not a party to this case.  This boundary post-dates the 1960 agreement.  According to Mr. Tice, the right-of-way follows this property boundary to Mr. Veach's property, even though it did not exist in 1960.

the gravel. Behind the gravel flat and the modern garage is a grassy area, beyond which a metal gate leads into Mr. Tice's field. Mr. Tice's field shares a boundary with another long, narrow strip of property owned by Mr. Brown, which roughly parallels Route 24. Mr. Veach's property sits directly behind Mr. Brown's property, separated by a fence and accessible through a sixteen-foot-wide gate.

A 1930s-era frame farmhouse had stood on Mr. Tice's property until the late 1990s, when he tore it down. The farmhouse sat to the right of the gravel flat, approximately opposite of where the garage stands today. Also, in the late 1990s, Mr. Tice demolished a white wooden structure (or series of connected structures) to make space to construct the garage. At one time or another, an outhouse, smokehouse, milkshed, and cow barn also stood on Mr. Tice's property. Testimony at trial indicated that the milkshed and cow barn had stood in the field beyond Mr. Tice's interior gate, apparently on the right-hand side as one passes through the gate. Neither structure exists today, but the foundation of the milkshed is still visible in the field. Mr. Tice's father, Fred Tice, owned the property in the 1970s, and his brother, Denzil Tice, then had it from 1983 until 1994, when he sold it to Mr. Tice.

Mr. Veach filed suit against Mr. Tice in October 2017, seeking a declaration as to the location of the express, deeded right-of-way described in the 1960 agreement. He also sought a declaration that his open, continuous, and uninterrupted use of what he believed to be the right-of-way had "ripened" into a prescriptive easement. Mr. Veach prayed for a judgment declaring that a thirty-five-foot-wide easement—express and prescriptive, both—burdened Mr. Tice's property and that it followed a particular survey line, described below in greater detail. Mr. Tice answered and did not deny the existence of the right-of-way or the 1960 agreement. But, he did deny that the right-of-way followed the survey line as alleged by Mr. Veach, and that Mr. Veach had satisfied the elements of a prescriptive easement.

The parties tried Mr. Veach's claims in July 2019. In addition to his own testimony, Mr. Veach offered the testimony of Terry Reed, Esq.,[7] qualified by the court as an expert in real estate law; Donald Teter, qualified by the court as an expert in land surveying; Richard Rosencrantz, Mr. Veach's employee; and Mr. Brown. Mr. Tice testified, as did Denzil Tice.

Mr. Veach testified that he had not known the location of the express, deeded right-of-way when he purchased his property in 1990 from Mr. Lutz. After closing, however, Mr. Lutz—a signatory to the 1960 agreement—walked and drove Mr. Veach across the right-of-way. Mr. Veach testified that, per Mr. Lutz, the right-of-way was

> [a] straight line after you come up out from 24, uphill a little
> bit, you reach the plateau, and then it's a straight line to Mr. Tice's
> interior gate. Thereafter, the gate opens toward you. The hinge is
> on the left. Thereafter, you pull your vehicle through there, then you

---

[7] Mr. Reed testified to the parties' chains of title. He opined that Mr. Tice's property was subservient to Mr. Veach's express, right-of-way, as specified in the 1936 deed and described in the 1960 agreement. Mr. Reed did not testify regarding the location of the right-of-way or a prescriptive easement.

make a left-angled turn for a distance, and then you make a right-angled turn in a straight line to my gate.

Mr. Veach offered the expert testimony of Mr. Teter to support his construction of the 1960 agreement and location of the express, deeded right-of-way. Mr. Veach had hired Mr. Teter in 1992 to survey his property boundaries and the right-of-way. The plat rendered by Mr. Teter shows the location of a roadway (marked "R/W") connecting Route 24 to Mr. Veach's property through Mr. Tice's field. *See* Figure 1.



*Figure 1*

Mr. Teter concluded that a roadway existed in that location because,

> [T]he part closest to the Secondary Route 24, down in here, that's actually a gravel driveway there, which I believe is still there in that position. But, further back, particularly along this 563.7 foot long here, there were wheel tracks, not extremely prominent, but it was clear that there had been traffic in that vicinity repeatedly over a period of years, and I saw it apparently compacted there, and I could see evidence where the wheel tracks were based upon the difference in the grass, the vegetation growing up on that part of the field.

Mr. Teter compared the 1992 survey to several aerial photographs of Mr. Tice's property. Mr. Teter testified that one, taken in 1965, clearly depicted the driveway from County Route 24 and then a road—or at least a variance in the land use consistent with a road—in a location that matched the roadway marked on the 1992 survey. The 1965 photograph did not clearly depict a road in any other location.

Mr. Teter admitted that he had not reviewed the 1960 agreement when he surveyed the roadway in 1992. Later, though, he compared the description of the right-of-way in that agreement with the roadway he had surveyed. Mr. Teter testified that, as he read the 1960 agreement, the right-of-way followed the driveway to its end, to the front of the old farmhouse. Upon comparison,

4

he concluded that the surveyed roadway and the description of the right-of-way in the 1960 agreement were not significantly inconsistent. He testified that while the 1965 photo showed buildings beside the driveway, he did not see a building in the picture that clearly appeared to be a tool shed. Mr. Teter also testified that Fred Tice, who had owned the property in the 1970s, told him that, "so far as he knew," the express, deeded right-of-way followed the driveway and then the roadway that Mr. Teter had observed and marked on the plat as "R/W." Mr. Teter did not opine on the location of the tool shed mentioned in the 1960 agreement, and emphasized that the 1992 plat expressed his observations of a roadway then in use. But, Mr. Veach indicated that the roadway depicted on the 1992 plat matched the route he used to cross Mr. Tice's property, that is, the route shown to him by Mr. Lutz in 1990.

Mr. Tice vehemently disputed that the 1992 plat depicted the path of the deeded, express right-of-way. Mr. Tice contended that the right-of-way took a wholly different route, one that did not continue up the driveway past his garage and across his field. Mr. Tice based his construction of the 1960 agreement on the location of what his family had called "the tool shed," the white wooden structure that he had demolished in the late 1990s. Mr. Tice offered two photographs to show the nature and location of that building. The first is undated, and depicts Mr. Tice's youthful brother on a Honda motorbike, parked in a grassy area in front of a split rail fence. The family's tool shed is visible behind the fence. The second photograph is dated 1976. In it, Denzil Tice, Fred Tice, and Mr. Tice's grandfather gather at a split rail fence, again with the family's tool shed behind them.

Both Denzil and Mr. Tice testified that the family's tool shed had stood near to the footprint of the modern garage, across the gravel flat from the now-demolished farmhouse. In view of the 1960 agreement's direction that the right-of-way ran over the driveway to the house (i.e., farmhouse), and then "continue[d] in a southwesterly direction around and to the South of a tool shed now located on said premises," Mr. Tice concluded that the former location of his family's tool shed dictated that the right-of-way had to depart the driveway to the left before reaching his garage, and, therefore, before one would have reached the old farmhouse. According to Mr. Tice, the right-of-way then proceeded through the orchard to his property line with Mr. Brown, before finally turning and following that boundary to Mr. Veach's property.

The jury also heard conflicting testimony regarding the frequency with which Mr. Veach and his employee, Mr. Rosencrantz, crossed Mr. Tice's property, as well as the route they took. According to Mr. Veach, he crossed Mr. Tice's property along the course specified by Mr. Lutz at least monthly from 1990 until 2016 by dump truck, pickup truck, car, and bicycle for general ingress and egress to his property. Mr. Veach and Mr. Rosencrantz both testified that they traversed Mr. Tice's property from time to time by tractor or pickup truck to reach other property owned by Mr. Veach and to tend cattle, repair fences, and brush hog the fields, there. Mr. Veach recalled that Fred Tice had seen him using the right-of-way several times and had not objected. Mr. Rosencrantz testified to similar interactions with Fred Tice.

Mr. Tice testified that he had seen Mr. Veach cross his property only twice in the 1990s, once on foot and once on a bicycle, and had never observed Mr. Rosencrantz cross during that time period. He denied seeing any indication on the ground of someone crossing his field by

5

vehicle to reach Mr. Veach's gate until 2008 or 2009.[8]  Mr. Tice testified that he first saw Mr. Rosencrantz cross his property on July 4, 2013.  When Mr. Tice saw Mr. Rosencrantz cross the property the next July, Mr. Tice testified that he told him that he had to take the prescribed right-of-way.[9]  Mr. Rosencrantz testified that this encounter occurred on July 4, 2016.  Mr. Tice also testified to the changing locations of gates and fencing in and around his property over time.

Without objection, the circuit court submitted both of Mr. Veach's claims to the jury.  Mr. Tice did not object to any of the instructions offered by the court; in fact, he drafted the prescriptive easement instruction.  Similarly, Mr. Tice did not object to the verdict forms, one on the location of the express, deeded right-of-way and the second on Mr. Veach's prescriptive easement claim.  Mr. Tice had moved for judgment as a matter of law during trial, arguing that Mr. Veach had not offered clear and convincing evidence of a prescriptive easement across Mr. Tice's property.  The court denied Mr. Tice's motion, and he did not renew it at the close of the evidence.

The jury returned both verdicts, completed.  On the first, it found that the right-of-way was located as Mr. Veach claimed, along the roadway depicted on the 1992 survey.  The jury also found that the right-of-way was fourteen-feet wide.  On the second, the jury found that Mr. Veach had proven by clear and convincing evidence the elements of a prescriptive easement across Mr. Tice's property.  The court polled the jury at Mr. Tice's request, but he did not object to the form of the verdicts returned by the jury.

The court entered a Judgment Order on August 30, 2019.  In it, the court restated the jury's verdicts and ordered that (1) Mr. Veach has an express, deeded right-of-way across Mr. Tice's property, (2) the express, deeded right-of-way is fourteen-feet wide and its centerline follows the roadway on the 1992 survey, (3) Mr. Veach has a prescriptive easement across Mr. Tice's property, and (4) the location and width of the prescriptive easement matches the right-of-way.  Specifically, the Judgment Order stated:

> 1.      That Plaintiff, John S. Veach, has an express, deeded, right-of-way across a tract of real estate owned by Defendant, Phillip D. Tice, said real estate being a 17-acre tract situate in Beverly District, Randolph County, West Virginia, conveyed to Defendant by Denzil R. Rice [sic.] and Margaret R. Tice, by deed dated February 7, 1994, of record in the Office of the Clerk of the County Commission of Randolph County, West Virginia, in deed Book 431 at page 57.
>
> 2.      That said express, deeded, right-of-way has a width of 14 feet, the centerline of which is as surveyed and platted by Donald L. Teter, licensed land surveyor, and as described as "R/W" (being approximately 1,032.4 feet in length) on a plat of survey,

---

[8] Mr. Brown testified that he had never seen anyone use a right-of-way over Mr. Tice's field, although he had seen evidence of vehicles crossing.

[9] Mr. Tice also testified to first seeing Mr. Rosencrantz cross his property sometime in 2004, 2005, or 2006.

entitled Plat of Survey for John S. Veach, admitted as evidence (Exhibit M) in the trial herein; a copy of said plat of survey, reduced in size, is attached hereto and incorporated herein as part of this Judgment Order.

3.      That Plaintiff, John S. Veach, has a prescriptive easement across said 17-acre tract of real estate owned by Defendant, Philip D. Tice, the centerline of said prescriptive easement being as surveyed and platted by Donald L. Teter and as specifically described in the preceding paragraph of this Judgment Order.

Mr. Tice filed a motion to set aside the jury's verdicts and for a new trial on September 9, 2019. He argued that the verdict form was very confusing and that the court should have presented the jury with only one verdict, plus the forms were drafted in a manner that led the jury to confuse the standards of proof applicable to Mr. Veach's claims. The court denied Mr. Tice's motion by summary order.[10] This appeal followed. Mr. Tice now seeks reversal of the Judgment Order and remand for determination of the location of Mr. Veach's express, deeded right-of-way.

## II.  STANDARD OF REVIEW

Generally, we review a circuit court's ruling on a motion for a new trial for abuse of discretion.[11] However, Mr. Tice did not challenge the sufficiency of the evidence of the location of the express, deeded right-of-way before the trial court in a motion for judgment as a matter of law under West Virginia Rule of Civil Procedure 50(a) or (b). We have explained that,

> "[i]t is well established that the sufficiency of the evidence is not reviewable on appeal unless a motion for a directed verdict was made in the trial court. . . .  The appellate court, therefore, is powerless to review the sufficiency of the evidence to support the verdict if the appellant made no motion for a directed verdict. *The only exception is where the insufficiency of the evidence constitutes plain error apparent on the face of the record which if not noticed would result in a manifest miscarriage of justice. . . .*"[12]

Nor did Mr. Tice challenge any incongruity in the jury's verdicts before the circuit court dismissed the jury. "Absent extenuating circumstances, the failure to timely object to a defect or

---

[10] Mr. Tice also objected to the introduction of aerial photographs of his property. He does not raise this argument on appeal. Apparently, the circuit court explained its denial of this motion during an October 2019 hearing. The appendix record does not contain a transcript of that hearing.

[11] *MacDonald v. City Hosp., Inc.*, 227 W. Va. 707, 715, 715 S.E.2d 405, 413 (2011).

[12] *Montgomery v. Callison*, 226 W. Va. 296, 302, 700 S.E.2d 507, 513 (2010) (quoting *Chambers v. Smith*, 157 W. Va. 77, 81, 198 S.E.2d 806, 809 (1973) (superseded by rule) (emphasis in original)).

7

irregularity in the verdict form when the jury returns the verdict and prior to the jury's discharge, constitutes a waiver of the defect or irregularity in the verdict form."[13]   So, we review the proceedings below for plain error.

We may act to correct to an error that was not raised before the trial court when there is "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."[14]  As to the first and second prerequisites to the application of the plain error doctrine, we have explained that,

> "[A]n error may be plain under existing law, which means that the plainness of the error is predicated upon legal principles that the litigants and trial court knew or should have known at the time of the prosecution [of the case]...." Syl. Pt. 6, in part, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).[15]

We now apply this exacting standard to Mr. Tice's arguments.

### III. ANALYSIS

Mr. Tice's three assignments of error share a central theme:  the jury's verdicts were tainted by the innate inconsistency between Mr. Veach's claims to both an express, deeded right-of-way and a prescriptive easement in the same location.  Mr. Tice contends, broadly, that the circuit court committed plain error when it entered a judgment order locating Mr. Veach's fourteen-foot wide express, deeded right-of-way along the roadway marked on the 1992 survey and ordering that Mr. Veach held a prescriptive easement in the same location and of the same width.  Mr. Tice also contends that during trial, the circuit court erroneously permitted Mr. Veach to "mix and match" his evidence.  According to Mr. Tice, the court stood by while Mr. Veach hoodwinked the jury into locating the right-of-way along the roadway in the 1992 survey with evidence that was relevant only to Mr. Veach's prescriptive easement theory.  That inaction, Mr. Tice asserts, led the jury to locate the right-of-way in a manner that is plainly contrary to the description in the 1960 agreement.  And, Mr. Tice argues that even if Mr. Veach's prescriptive easement theory was properly before the jury, Mr. Veach did not offer clear and convincing evidence of a prescriptive

---

[13] Syl. Pt. 2, *Combs v. Hahn*, 205 W. Va. 102, 516 S.E.2d 506 (1999).  "The rationale for the rule is, that it is required in order to give the trial court the opportunity to correct any infirmity in the verdict while correction is still possible."  *Id*. at 105–06, 516 S.E.2d at 510–11 (internal quotation omitted).  *See also id*. at 105, 516 S.E.2d at 509 (quoting in a parenthetical *North Am. Catamaran Racing Ass'n, Inc. v. McCollister*, 480 So.2d 669, 671 (Fla.Dist.Ct.App.5. 1985) ("'[A] party must object to defective verdict forms or inconsistent verdicts before the jury is discharged to preserve the claim' (citations omitted))").

[14] Syl. Pt. 7, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

[15] Syl. Pt. 3, *Cartwright v. McComas*, 223 W. Va. 161, 672 S.E.2d 297 (2008).

easement.  We consider Mr. Tice's second assignment of error, regarding the location of the express, deeded right-of-way, before turning to his first.[16]

## A.  *Sufficiency of the Evidence Supporting the Jury's Location of the Right-of-Way*

Mr. Tice's second assignment of error boils down to an attack on the sufficiency of Mr. Veach's evidence supporting the jury's verdict locating the express right-of-way on the roadway marked on the 1992 survey.  As noted above, our review is for plain error that amounts to a manifest miscarriage of justice.  After a thorough review of the record in this case, we disagree with Mr. Tice that the jury's location of the express, deeded right-of-way amounts to such error.

Mr. Tice's primary objection to the jury's location of the right-of-way is that he believes it contradicts the description in the 1960 agreement.  That description, he contends, includes only three bearings, not four bearings as appear on the roadway on the 1992 survey, the location selected by the jury.  He argues that the 1960 agreement calls for the right-of-way to depart immediately from the driveway at the crest of the small hill, and then to the left in a southerly direction toward the orchard and Mr. Brown's property line to avoid the former location of his family's tool shed.  According to Mr. Tice, the express right-of-way described in the 1960 agreement cannot match the location of the roadway on the 1992 survey because, if located there, then the right-of-way would have run *through* his family's tool shed, and not around it.  Moreover, he contends that Mr. Teter surveyed the right-of-way based on the route Mr. Veach wanted to take across Mr. Tice's property, and not on the description in the 1960 agreement.

Mr. Veach counters that the 1960 agreement does not say that the express right-of-way departs from the driveway and heads south; instead, the right-of-way goes "around" a tool shed, and then in a "straight line" to what is now his property.  Mr. Veach asserts that Mr. Teter surveyed what he saw on the ground in 1992 and that when he later compared the description in the 1960 agreement to that survey, he saw nothing clearly inconsistent between the two.  He emphasizes Mr. Teter's testimony that the 1965 aerial photograph of Mr. Tice's property does not clearly depict a tool shed and that he did not recall seeing a tool shed building on Mr. Tice's property when he conducted the survey in 1992.

Mr. Tice's argument that the roadway shown on the 1992 survey contradicts the description in the 1960 agreement does not establish plain error sufficient to set aside the jury's verdict.  Significantly, Mr. Veach testified that Mr. Lutz, his grantor and a party to the 1960 agreement, showed him the right-of-way shortly after Mr. Veach purchased his property.  According to Mr. Veach, the right-of-way shown to him by Mr. Lutz matched the roadway on the 1992 survey.  Further, Mr. Teter testified that Fred Tice, a former owner of Mr. Tice's property and resident of the old farmhouse, told him that, "so far as he knew," the express, deeded right-of-way followed the driveway and then the roadway that Mr. Teter had observed and marked on the plat as "R/W."

Mr. Tice takes issue with the fact that Mr. Teter did not review the 1960 agreement when he completed his survey in 1992.  But, Mr. Teter later reviewed the agreement, compared it to the 1992 survey, and then testified that he saw no significant inconsistencies between the two.  Mr.

---

[16] Our resolution of Mr. Tice's first assignment of error moots his third, so we do not address it.

9

Teter also testified regarding the alleged incongruity in the description of the right-of-way in the 1960 agreement and the calls forming the right-of-way in the 1992 survey. In a colloquy with Mr. Veach's counsel, Mr. Teter explained:

> Mr. Veach's counsel: Are any of those dimensions mentioned in that right-of-way agreement inconsistent with your platting back in 1992?
>
> Mr. Teter: I don't see that the language is in any significant way – or inconsistent with where I observed the right-of-way to apparently to be in 1992.
>
> Mr. Veach's counsel: And the directions that are shown on this right-of-way are what?
>
> Mr. Teter: Those directions are general directions. They are not specific angular directions. They are based upon – simply as general westerly direction, which the driveway – when it says "westerly," it's actually running north of westerly. And the northwest direction is only specific as to which quadrant of 90 degrees it is in. There are 360 degrees in a full circle. . . . So those directions are not specific to any closer than perhaps 45 degrees, if that.

Finally, Mr. Tice's argument about the location of his family's tool shed does not persuade us that the jury's verdict amounts to a miscarriage of justice. Clearly, the 1960 agreement references a tool shed. Mr. Tice contends that the "tool shed" mentioned in the agreement must have been the white wooden structure that his family called a tool shed and which stood near the footprint of his garage. But, Mr. Teter testified that he could not clearly discern a tool shed in the 1965 aerial photograph of Mr. Tice's property. And, Mr. Tice's father owned the property in the 1970s, years after the formation of the agreement and the date the aerial photograph was taken. As Mr. Veach's counsel pointed out at trial, Mr. Tice was only two years old when Mr. Lutz and Ms. McLaughlin made the 1960 agreement. So, even if the Tice family tool shed was located as Mr. Tice and Denzil Tice testified, that testimony does not make plain *the location of a tool shed existing on the property in 1960*, such that the jury's verdict becomes a miscarriage of justice. For all of the reasons discussed above, we affirm that portion of the Judgment Order pertaining to the location of Mr. Veach's express, deeded right-of-way.

## B. The Prescriptive Easement

We briefly address Mr. Tice's remaining assignment of error: that the circuit court erred in finding in the Judgment Order that Mr. Veach held a prescriptive easement in the same location, and of the same width, as the express, deeded right-of-way as determined by the jury. Mr. Tice did not object to the form of the jury's verdicts before the circuit court discharged the jury, so we again review for plain error.

10

Our law on prescriptive easements is clear that "[a] person claiming a prescriptive easement must prove . . . the adverse use of another's land . . . ."[17] More specifically, we have held

> [i]n the context of prescriptive easements, an "adverse use" of land is a wrongful use, made without the express or implied permission of the owner of the land. An "adverse use" is one that creates a cause of action by the owner against the person claiming the prescriptive easement; *no prescriptive easement may be created unless the person claiming the easement proves that the owner could have prevented the wrongful use by resorting to the law*.[18]

Quoting the Restatement (Third) of Property, we then elaborated on when the use of another's property is adverse:

> "To be adverse ... a use must create a cause of action for interference with an interest in property like trespass, nuisance, or interference with a servitude benefit. To be adverse, the use must be made without authority and without permission of the property owner. Thus, uses made pursuant to licenses are not adverse, nor are uses made pursuant to servitudes created expressly, by implication, or by necessity."[19]

That explanation makes plain the error in the Judgment Order. The jury found that Mr. Veach has authority under the express right-of-way to cross Mr. Tice's property along the roadway shown on the 1992 plat. So, his passage across Mr. Tice's property along that roadway cannot be adverse to Mr. Tice's interest in his property because "uses made pursuant to licenses are not adverse, nor are uses made pursuant to servitudes created expressly, by implication, or by necessity."[20]

Mr. Veach acknowledges that the prescriptive easement may be superfluous in light of the jury's location of the express, deeded right-of-way.[21] That concession, however, does not remedy

---

[17] Syl. Pt. 1, in part, *O'Dell v. Stegall*, 226 W. Va. 590, 703 S.E.2d 561 (2010).

[18] Syl. Pt. 5, *id*. (emphasis added).

[19] *Id*. at 612, 703 S.E.2d at 583 (quoting Rst. (3d) of Property (Servitudes), § 2.16, cmt. f.).

[20] *Id*.

[21] We acknowledge Mr. Veach's argument that, under West Virginia Rule of Civil Procedure 8(e)(2), he is entitled to plead alternative theories of relief. While we agree with Mr. Veach as a general proposition, we note one court's observation that "[w]hen a party prevails on one claim, the claims that are brought in the alternative are foreclosed." *Hagan v. Baird*, 288 F. Supp. 3d 803, 804 (W.D. Mich. 2018), *aff'd sub nom. In re: B & P Baird Holdings, Inc.*, 759 F. App'x 468 (6th Cir. 2019). *See, e.g., Indus. Specialty Chemicals v. Cummins Engine Co., Inc.*,

any confusion or cloud upon Mr. Tice's title that may be caused by the inconsistent findings in the Judgment Order. Without correction, the plainness of the legal error on the face of the Judgment Order may also seriously affect the public reputation of the proceedings, below. Consequently, we reverse the Judgement Order as it pertains to the prescriptive easement.[22]

## IV. CONCLUSION

For the reasons explained above, the circuit court's Judgment Order of August 30, 2019 is affirmed as it pertains to Mr. Veach's express, deeded right-of-way, and reversed as it pertains to the prescriptive easement, and the matter is remanded for entry of an order consistent with this decision.

Affirmed-in-part, reversed-in-part, and remanded.

**ISSUED:** March 3, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

---

918 F. Supp. 1173, 1180 (N.D. Ill. 1996) ("While it is true that a plaintiff cannot prevail on both a breach of contract claim and a quasi-contract claim dealing with the same subject matter, there is no rule against pleading both causes of action in the alternative.") (internal citations omitted).

[22] Mr. Veach did not cross-appeal the Judgment Order. Consequently, he has waived his right to challenge the circuit court's finding that the prescriptive easement was located as shown on the 1992 survey, and of the same width as his express, deeded right-of-way.