413 S.E.2d 100

**Debra PRITCHARD, Individually, and Joyce Ann Pritchard, an Infant Under the Age of Eighteen Years, by Debra Pritchard, Her Mother and Next Friend, Plaintiffs,**

**v.**

**Manuel ARVON, Superintendent of Schools for the Boone County Board of Education, and the Board of Education of the County of Boone, Defendants.**

No. 20202.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 18, 1991.

Decided Dec. 12, 1991.

No appearance for plaintiffs.

Michele Grinberg, Mary Jo Allen, Kay, Casto, Chaney, Love & Wise, Charleston, for defendants.

McHUGH, Justice:

This case is before the Court upon the certified questions of the Circuit Court of Boone County. The plaintiffs in the underlying action are Debra Pritchard, and her daughter, Joyce Ann Pritchard. The defendants are Manuel Arvon, Superintendent of Boone County Schools, and the Boone County Board of Education.

I

The plaintiff, Joyce Ann Pritchard, was a third grade student at Van Elementary School. On May 12, 1988, Joyce Ann fell from "monkey bars" on the school's playground during normal school playground hours. Joyce Ann fractured both of her arms. Accordingly, the plaintiffs filed this suit in the Circuit Court of Boone County.

The defendant, Manuel Arvon filed a motion to strike his name from the pleadings on the ground that he is immune from liability under the "Governmental Tort Claims and Insurance Reform Act," set forth in *W.Va.Code*, 29–12A–1 to 29–12A–18 [1986] (the "Act").

The circuit court denied the defendant Arvon's motion and, on March 28, 1991, certified the following questions to this Court: (1) Whether the statutory immunity granted to employees of political subdivisions by *W.Va.Code*, 29–12A–5(b) [1986] of the Governmental Tort Claims and Insurance Reform Act is constitutionally permissible?

And if the answer to Question 1 is "yes," then: (2) Whether the expressed denial of waiver as set forth in *W.Va.Code*, 29–12A–16(d) [1986] is constitutionally permissible?

The circuit court found that the Act is unconstitutional, thus, answering the first question in the negative, and denying the defendant Arvon's motion to strike. In light of this answer, the circuit court found it unnecessary to reach a ruling on the second question.

We are of the opinion that the circuit court erred in its answer. For the reasons that follow in this opinion, we believe that the provisions of the Act in question in this case are constitutional.

II

In 1986, the West Virginia Legislature enacted the "Governmental Tort Claims and Insurance Reform Act," codified in *W.Va.Code*, 29–12A–1 to 29–12A–18. The purposes of the Act "are to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions

for such liability." *W.Va.Code*, 29–12A–1 [1986].[1]

Until our recent decision in *Randall v. Fairmont City Police Department*, 186 W.Va. 336, 412 S.E.2d 737 (1991), this Court has not had occasion to discuss the constitutionality of the provisions of this Act.[2] A brief review of the history of governmental immunity in this state is pertinent to our discussion herein.

In *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975), this Court abolished the rule of municipal governmental immunity. *Id.*, syl. pt. 10. In syllabus point 2 to *Gooden v. County Commission*, 171 W.Va. 130, 298 S.E.2d 103 (1982), this Court recognized the abolition of governmental immunity for county commissions, and perhaps more relevant to the case now before us, in *Ohio Valley Contractors v. Board of Education*, 170 W.Va. 240, 293 S.E.2d 437 (1982), the Court held that "[l]ocal boards of education do not have state constitutional immunity nor common law governmental immunity from suit." *Id.*, syl.

The Court's opinion in *Long*, penned by Chief Justice Haden, stated that "it would seem preferable for the Legislature to speak comprehensively on the subject[.]" 158 W.Va. at 783, 214 S.E.2d at 859.[3] In 1986, the legislature did so speak, by enacting the statute at issue in this case.[4] *See generally* Note, *Tort Reform: The Reemergence of Local Government Immunity[—]The West Virginia Governmental Tort Claims and Insurance Reform Act of 1986*, 89 W.Va.L.Rev. 466 (1987).

*W.Va.Code*, 29–12A–5(b) [1986] provides:

(b) An employee of a political subdivision is immune from liability unless one of the following applies:

(1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;

(2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or

(3) Liability is expressly imposed upon the employee by a provision of this code.

Furthermore, *W.Va.Code*, 29–12A–13(b) [1986] provides: "Suits instituted pursuant to the provisions of this article shall name as defendant the political subdivision against which liability is sought to be established. *In no instance may an employee of a political subdivision acting within the scope of his employment be named as defendant.*" (emphasis supplied)

A " '[p]olitical subdivision' means any county commission, municipality and *county board of education*[.]" *W.Va.Code*, 29–12A–3(c) [1986], in part (emphasis supplied). An " '[e]mployee' means an officer, agent, employee, or servant, whether compensated or not, whether full-time or not, who is authorized to act and is acting within the scope of his or her employment for a political subdivision." *W.Va.Code*, 29–12A–3(a) [1986], in part. There is no dispute in this case that the Boone County Board of Education is a political subdivi-

---

1. The purposes of the Act are based upon legislative findings that political subdivisions in the state of West Virginia are not able to procure liability insurance coverage at a reasonable cost because of the high cost of defending claims, the risk of liability being beyond coverage which is affordable, and the inability of the political subdivisions to afford such coverage. *W.Va.Code*, 29–12A–2 [1986].

2. We have recognized the *in* applicability of the Act due to causes of action accruing prior to the enactment of *W.Va.Code*, 29–12A–1 *et seq.* [1986]. *See Lepon v. Tiano*, 181 W.Va. 185, 187, 381 S.E.2d 384, 386 (1989); *Benson v. Kutsch*, 181 W.Va. 1, 2 n. 4, 380 S.E.2d 36, 37 n. 4 (1989).

3. *Long* contains a more detailed and excellent discussion of the history of governmental immunity.

4. The defendant Arvon suggests that this Court, in *Morningstar v. Black & Decker Manufacturing Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979), found the lengthy analysis in *Long* to be unnecessary because, as was recognized in *Morningstar*, this Court enjoys an "historic power to alter or amend the common law." *Morningstar*, syl. pt. 2, in part. However, we do not believe that the decision in *Morningstar* does anything to abrogate the holding of *Long*, because, although we recognized that the courts have always had the power to change the common law, we did not say anything to disapprove of *Long's* holding with respect to governmental immunity.

sion, nor is there any dispute that the defendant Arvon is an employee of such political subdivision. Rather, the only issues confronting this Court are of a constitutional nature.

Other jurisdictions have upheld, governmental immunity statutory schemes. *See Adams v. City of Peoria*, 77 Ill.App.3d 683, 33 Ill.Dec. 183, 396 N.E.2d 572 (1979); *Brown v. Wichita State University*, 219 Kan. 2, 547 P.2d 1015, *appeal dismissed, sub. nom. Bruce v. Wichita State University*, 429 U.S. 806, 97 S.Ct. 41, 50 L.Ed.2d 67 (1976); *Robson v. Penn Hills School District*, 63 Pa.Cmwlth.Ct. 250, 437 A.2d 1273 (1981). *See also Randall v. Fairmont City Police Department*, 186 W.Va. at 343–44, 345–46, 412 S.E.2d at 744–45, 746–47 (1991) (collecting cases). In these cases, the courts addressed the constitutional implications with respect to provisions guaranteeing equal protection and access to courts through certain remedies. We too address the provisions of the Act in this context.[5]

### A

Article III, section 17 of the *West Virginia Constitution* provides: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, *shall have remedy by due course of law;* and justice shall be administered without sale, denial or delay." (emphasis supplied)

■ This constitutional provision was recently addressed in *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991), specifically, the certain remedy provision. In that case, we upheld the constitutionality of *W.Va.Code*, 55–2–6a [1983], which imposes a ten-year limitation for actions pertaining to certain damages resulting from the construction of improvements to real property. In syllabus point 6 to *Gibson*, we held: "There is a presumption of constitutionality with regard to legislation. However, when a leg-

islative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 of the West Virginia Constitution is implicated."

■ We expounded upon this principle in *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991). There, the Court adopted a two-part test that should be applied when the certain remedy provision is implicated pursuant to *Gibson*. The purpose of this test is "[t]o give effect to the certain remedy provision, which recognizes the tension between the existing right of a person to a remedy for certain injuries, on the one hand, and, on the other hand, the legislature's power to alter or repeal that remedy by 'due course of law[.]' " *Lewis*, 185 W.Va. at 694–95, 408 S.E.2d at 644–45. This test is set forth in syllabus point 5 to *Lewis*:

When legislation either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication, thereby implicating the certain remedy provision of article III, section 17 of the *Constitution of West Virginia*, the legislation will be upheld under that provision if, first, a reasonably effective alternative remedy is provided by the legislation or, second, if no such alternative remedy is provided, the purpose of the alteration or repeal of the existing cause of action or remedy is to eliminate or curtail a clear social or economic problem, and the alteration or repeal of the existing cause of action or remedy is a reasonable method of achieving such purpose.

■ As pointed out previously herein, we addressed the constitutionality of the Act at issue in this case in *Randall v. Fairmont City Police Department*, 186 W.Va. 336, 412 S.E.2d 737 (1991). In syllabus point 2 thereto, we held: "The qualified tort immunity provisions of the West

---

**5.** We note that the plaintiffs have not filed a brief or memorandum in support of their position before this Court, nor does the record indicate that the plaintiffs submitted a written argu-

ment before the court below. However, as stated above, we address the arguments most commonly raised with respect to the constitutionality of governmental immunity statutes.

**450**

Virginia Governmental Tort Claims and Insurance Reform Act of 1986, *W. Va. Code*, 29–12A–1 to 29–12A–18, do not violate the certain remedy provision of article III, section 17 of the *Constitution of West Virginia*."

In upholding the constitutionality of the Act in this respect, we stated in *Randall* that

> the legislature has found that political subdivisions in this state have been unable to raise sufficient revenues to procure affordable liability insurance coverage without reducing the quantity and quality of traditional governmental services.... We believe this finding states a clear economic problem and that the method selected by the legislature to eliminate or curtail this clear economic problem, specifically, the broad, but not total, reinstatement of local governmental tort immunity, is a reasonable method of achieving the legislative objective.... While we are sensitive to the interests of those persons injured by political subdivisions, the legislature has responded reasonably to the Court's invitation in *Long* to speak comprehensively on this subject.

*Randall*, 186 W.Va. at 343–44, 412 S.E.2d at 744–45.

Obviously, by concluding in *Randall* that the entire Act does not violate the state constitution's certain remedy provision, we hold specifically in this case, that *W. Va. Code*, 29–12A–5(b) [1986], a section within that Act, is *not* violative of the certain remedy provision as well.

In applying the principles enunciated in syllabus point 2 of *Randall* and syllabus point 5 of *Lewis* to the case at hand, it is clear that the provisions of the Act at issue are not unconstitutional under the certain remedy provision. Although the certain remedy provision is implicated, the purposes of the Act, as set forth in *W. Va. Code*, 29–12A–1 [1986], and previously herein, "are to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." Clearly, the method by which the legislature has chosen to achieve such purpose is reasonable. The plaintiff's cause of action against the Boone County Board of Education is not extinguished. *See W. Va. Code*, 29–12A–4(c) [1986]. Rather, the Act merely removes an employee of the Board, the superintendent, as a defendant in the lawsuit.

**B**

■ As for the equal protection implications, again, we do not believe that the Act is unconstitutional in this regard. Article III, section 10 of the *West Virginia Constitution* provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers." This constitutional provision is the basis for this state's equal protection principles. "West Virginia's constitutional equal protection principle is a part of the Due Process Clause found in Article III, Section 10 of the West Virginia Constitution." Syl. pt. 4, *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 388 S.E.2d 480 (1989).

In syllabus point 5 to *Randall*, we held: "The qualified tort immunity provisions of the West Virginia Governmental Tort Claims and Insurance Reform Act of 1986, *W. Va. Code*, 29–12A–1 to 29–12A–18, do not violate the equal protection principles of article III, section 10 of the *Constitution of West Virginia*."

■ The equal protection principles which may be implicated in this case consist of legislative classifications involving economic rights.

> ' "Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause." Syllabus Point

7, [as modified,] *Atchinson v. Erwin*, [172] W.Va. [8], 302 S.E.2d 78 (1983).' Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, [174] W.Va. [538], 328 S.E.2d 144 (1984).

Syl. pt. 4, *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991). *Accord*, syl. pt. 2, *Lewis v. Canaan Valley Resorts, Inc.*, 185 W.Va. 684, 408 S.E.2d 634 (1991); syl. pt. 4, *Courtney v. State Department of Health*, 182 W.Va. 465, 388 S.E.2d 491 (1989).

Accordingly, the inquiry in this case is whether the provisions of the Act bear a reasonable relationship to a proper governmental purpose. The purpose, as stated, is to limit liability insurance costs for political subdivisions. This purpose is based upon a finding that the political subdivisions of this state were not able to procure adequate liability insurance at reasonable costs due to the high cost of defending claims. *See W.Va.Code*, 29–12A–2 [1986]; note 1, *supra*.

Additionally, we pointed out in *Randall* that

the qualified immunity from tort liability available under *W.Va.Code*, 29–12A–5(b) [1986] to an employee of a political subdivision does not violate equal protection principles. Such employee immunity is consistent generally with the political subdivision's qualified immunity, and the employee immunity is reasonable in scope because the Act imposes employee *liability* for tort damages proximately caused by the employee's acts or omissions which were manifestly outside the scope of employment or official responsibilities or which were with malicious purpose, in bad faith, or in a wanton or reckless manner, *W.Va.Code*, 29–12A–5(b)(1)–(2) [1986].

*Randall*, 186 W.Va. at 346, 412 S.E.2d at 747 (emphasis in original).

Clearly, the Act is reasonable in furthering the purpose for which it was enacted.

### C

■ Therefore, *W.Va.Code*, 29–12A–5(b) [1986], which provides immunity for an employee of a political subdivision under some circumstances, does not violate the certain remedy provision of *W.Va. Const.* art. III, § 17, nor does it violate equal protection principles as contained in *W.Va. Const.* art. III, § 10.

The first certified question is therefore answered in the affirmative.

### III

■ We now turn to the second question certified to this Court: Whether the expressed denial of waiver as set forth in *W.Va.Code*, 29–12A–16(d) [1986] is constitutionally permissible? [6]

*W.Va.Code*, 29–12A–16(d) [1986] provides: "The purchase of liability insurance, or the establishment and maintenance of a self-insurance program, by a political subdivision does not constitute a waiver of any immunity it may have pursuant to this article or any defense of the political subdivision or its employees."

The defendant Arvon contends that the purposes of the Act support the rationale of this section, specifically, the substantial increases in municipal liability insurance premiums, increases in deductibles, and the lack of available coverage for certain high risk activities.

Again, as held in syllabus point 4 herein and syllabus point 5 to *Randall*, the provisions of this Act do not violate equal protection principles.

As to whether this statutory provision bears a reasonable relationship to a proper

---

6. We only address this question in an equal protection context because the certain remedy provision is not implicated by this section.

Ordinarily, we refrain from addressing a certified question when the circuit court has failed to answer the question. *See Horace Mann Insurance Co. v. Leeber*, 180 W.Va. 375, 381 n. 11, 376 S.E.2d 581, 587 n. 11 (1988) (and cases cited

therein). However, as stated previously herein, the circuit court did not answer this second certified question because it believed that an answer is not necessary in light of its answer to the first question. Nonetheless, because our answer to this question may be pertinent to the underlying action in this case as well as future cases, we address it herein.

governmental purpose, we conclude that it does. As pointed out by the defendant Arvon, by limiting a political subdivision's liability, the political subdivision is thereby encouraged to purchase liability insurance to defend itself for actions for which there is no immunity. As a result, one of the legislative objectives of the Act, which is to make insurance more available and more affordable to political subdivisions, is met.

As was stated in *Randall:* "We believe that the qualified tort immunity provisions of the Act are rationally based and reasonably relate to a proper governmental purpose, specifically, ... to stabilize the political subdivisions' ability to obtain affordable liability insurance coverage by defining the risks to be covered." *Randall,* 186 W.Va. at 346, 412 S.E.2d at 747.

Accordingly, we hold that *W.Va.Code,* 29–12A–16(d) [1986], which provides that the purchase of liability insurance or the establishment of an insurance program by a political subdivision does not constitute a waiver of any immunity or defense of the political subdivision or its employees, does not violate equal protection principles as set forth in *W.Va. Const.* art. III, § 10.[7]

The second certified question is therefore answered in the affirmative.

### IV

Having answered the certified questions herein, this case is dismissed from the docket of this Court.

Certified questions answered; case dismissed.

---

**7.** In light of our decision, we need not address the defendant's contention that this Court's decisions in *Pittsburgh Elevator Co. v. West Virginia Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983), and *Bradfield v. Board of Education,* 128 W.Va. 228, 36 S.E.2d 512 (1945), support the constitutionality of the statutory provision at issue in this case.