IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2024 Term

**FILED**

**May 9, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 22-0428
_____

TODD KENT, MARK SPESSERT, CHRISTOPHER KUTCHER,
CITY OF CHARLES TOWN, BRADLEY MEACHAM, GLENNA HOSBY-BROWN,
WILLIAM ROPER, and CITY OF RANSON
Defendants Below, Petitioners,

v.

CHRISTOPHER SULLIVAN,
Plaintiff Below, Respondent.

_____

Appeal from the Circuit Court of Jefferson County
The Honorable Debra McLaughlin, Judge
Civil Action No. 21-C-136

REVERSED AND REMANDED

_____

Submitted: March 13, 2024
Filed: May 9, 2024

Matthew R. Whitler, Esq.
PULLIN, FOWLER, FLANIGAN,
BROWN & POE, LLC
Martinsburg, West Virginia
Counsel for Petitioners Todd Kent,
Mark Spessert, Christopher Kutcher,
and the City of Charles Town

Michael T. Logsdon, II, Esq.
Sutton & Janelle, PLLC
Martinsburg, West Virginia
Counsel for Respondent

Keith C. Gamble, Esq.
PULLIN, FOWLER, FLANIGAN,
BROWN & POE, LLC
Morgantown, West Virginia
Counsel for Petitioners Bradley Meacham,
Glena Hosby-Brown, William Roper, and
the City of Ranson

JUSTICE WOOTON delivered the Opinion of the Court.

CHIEF JUSTICE ARMSTEAD AND JUSTICE BUNN concur and reserve the right to file separate opinions.

**SYLLABUS BY THE COURT**

1.      "Under Rule 12 of the West Virginia Rules of Civil Procedure, a circuit court's denial of a motion to dismiss a complaint that is predicated on the statutory immunity conferred by the Governmental Tort Claims and Insurance Reform Act is an interlocutory ruling that is subject to immediate appeal under the 'collateral order' doctrine." Syl. Pt. 5, *State ex rel. Grant Cnty. Comm'n v. Nelson,* 244 W. Va. 649, 856 S.E.2d 608 (2021).

2.      "'A circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine.' Syllabus point 1, *West Virginia Board of Education v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015)." Syl. Pt. 1, *W. Va. Reg'l Jail and Corr. Facility v. Estate of Grove*, 244 W. Va. 273, 852 S.E.2d 773 (2020).

3.      "When a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*." Syl. Pt. 4, *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998).

4.      "'[This Court] may, sua sponte, in the interest of justice, notice plain error.' Syl. Pt. 1, in part, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998)." Syl. Pt. 1, *Cartwright v. McComas*, 223 W. Va. 161, 672 S.E.2d 297 (2008).

5.      " ' " 'To trigger application of the "plain error" doctrine there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings.' Syllabus point 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)." Syllabus Point 7, *Page v. Columbia Natural Resources, Inc.*, 198 W. Va. 378, 480 S.E.2d 817 (1996).' Syl. Pt. 12, *Keesee v. General Refuse Service, Inc.*, 216 W. Va. 199, 604 S.E.2d 449 (2004)." Syl. Pt. 2, *Cartwright v. McComas*, 223 W. Va. 161, 672 S.E.2d 297 (2008).

**WOOTON, Justice:**

The petitioners/defendants below, Officers Bradley Meacham and Glenna Hosby-Brown, Chief William Roper, and the City of Ranson, ("Ranson petitioners"), as well as Officer Todd Kent, Sgt. Mark Spessert, Chief Christopher Kutcher,[1] and the City of Charles Town ("Charles Town petitioners") (collectively "the petitioners"), appeal the May 3, 2022, order of the Circuit Court of Jefferson County, West Virginia, partially granting the petitioners' motion to dismiss the amended complaint filed by the respondent/plaintiff below, Christopher Sullivan. The respondent asserted twenty-three state law causes of action against the petitioners following a confrontation that he had with the petitioner police officers which led to his arrest on various charges including disorderly conduct and driving under the influence ("DUI").[2] The Ranson petitioners and the Charles Town petitioners filed two separate motions to dismiss the respondent's amended complaint pursuant to West Virginia Rule of Civil Procedure 12(b)(6), alleging varying theories of immunity.

In its order resolving the petitioners' motions, and of key importance to the issues before us, the circuit court applied both the analytical framework of *West Virginia Regional Jail and Correctional Facility Authority v. A.B.*, 234 W. Va. 492, 766 S.E.2d 751

---

[1] All the respective law enforcement officers will sometimes be referred to collectively as the "petitioner police officers."

[2] As discussed *infra* in greater detail, the respondent was eventually cleared of all charges.

1

(2014) and *West Virginia Regional Jail and Correctional Facility Authority v. Estate of Grove*, 244 W. Va. 273, 852 S.E.2d 773 (2020), as well as the West Virginia Governmental Tort Claims and Insurance Reform Act ("the Tort Claims Act"), W. Va. Code §§ 29-12A-1 to -18 (2023), in resolving the immunity issues.[3]

After careful review of the briefs of the parties, their oral arguments, the appendix record, and the applicable law, we reverse the circuit court's decision and remand for further proceedings consistent with this opinion. Insofar as none of the petitioners' assigned errors[4] address the overarching error in the circuit court's decision, we sua sponte find that the court committed plain error[5] by basing its immunity decisions on common law

---

[3] The circuit court also dismissed the City of Ranson Police Department and the Charles Town Police Department, who were named defendants in the respondent's amended complaint, and granted the petitioners' motions to dismiss the respondent's claims for punitive damages pursuant to West Virginia Code section 29A-12A-7 (prohibiting punitive damages against political subdivisions). Neither of these rulings were appealed by the parties and, therefore, are not now before the Court. Further, the City of Ranson Police Department and the Charles Town Police Department are not named petitioners for purposes of this appeal.

[4] On appeal, the petitioners raise four assignments of error: that the circuit court erred 1) by failing to dismiss the petitioner police officers on the grounds of qualified immunity; 2) by failing to dismiss all the respondeat superior claims against the City of Ranson and the City of Charles Town on the basis of qualified immunity; 3) by failing to dismiss the assault and battery claims against the petitioner police officers; and 4) by failing to dismiss the respondeat superior claims for battery against Chief Roper and Chief Kutcher on the basis of qualified immunity. Because we reverse on other grounds, we decline to address the issues raised by the petitioners.

[5] *See* Syl. Pts. 1 and 2, *Cartwright v. McComas*, 223 W. Va. 161, 672 S.E.2d 297 (2008) (setting forth requisite elements for application of plain error doctrine and discussed *infra* in greater detail).

qualified immunity principles which are only applicable to the State, its agencies, officials, and employees, rather than applying the provisions of the Tort Claims Act, which govern immunity for the claims asserted against the petitioners as they are undisputedly political subdivisions and employees of political subdivisions.

## I. Facts and Procedural Background

The respondent's amended complaint alleges[6] that on the night of September 28, 2019, he observed the police vehicles of Officer Meacham and Sgt. Spessert parked in a privately owned parking lot that served the residents of an apartment complex where the respondent resided; however, their vehicles were not positioned in individually marked parking spaces. The officers were responding to a vehicle break-in call at the apartment complex. While he was driving past the officers, the respondent made remarks out his window to the officers about their parking, after which he parked his own vehicle. Officer Meacham then confronted him, allegedly without reasonable suspicion that the respondent had committed any crime, and a verbal altercation ensued between the two. During the verbal altercation which included profanity by both individuals and threats of jail and hospitalization made by Officer Meacham, Officer Meacham warned the respondent to stop loudly cursing at the officers or else he would be arrested for disorderly conduct. The respondent started to walk away yet he continued to argue with Officer Meacham, using

---

[6] The allegations in the respondent's amended complaint reference specific portions from the transcripts of the involved officers' body cameras.

profane language. Officer Meacham arrested the respondent for disorderly conduct and used two sets of handcuffs to restrain him, one of the sets coming from Sgt. Spessert. Additionally, as the respondent was being transported to the police vehicle, Officer Meacham used a leg sweep to take him to the ground after he asked the officers to pick up his belongings. He alleges that he injured his head when he fell to the ground and, despite his requests, none of the police officers contacted or sought medical assistance for him.

After the respondent was placed in a police cruiser, Officer Meacham stated that he wanted to "add [driving under the influence ("DUI")] now because he's just running his mouth." The officers claim that they detected an odor of alcohol on the respondent prompting them to reasonably suspect a possible DUI. The respondent rejected the officers' request that he perform field sobriety tests but claims he did not refuse a preliminary breathalyzer test; however, the officers contend that they understood the respondent's refusal to take the field sobriety tests as a refusal of the preliminary breathalyzer test. The respondent contends that he was not lawfully arrested because he did not affirmatively refuse either the preliminary or secondary chemical breath tests and he was not given paperwork explaining the penalties for refusing a breath test. He asserts that he was further harassed and verbally abused by Officers Kent and Hosby-Brown after he was arrested and placed inside a police vehicle.

Ultimately, the respondent was charged with disorderly conduct, DUI, battery on an officer, obstructing an officer, resisting arrest, fingerprint refusal, and

4

destruction of property. The State later dismissed the charges for fingerprint refusal, DUI, and destruction of property; a jury found the respondent not guilty of obstructing an officer and disorderly conduct, and a magistrate entered a judgment of acquittal on the charge of battery on an officer.

On September 27, 2021, the respondent filed a 244-paragraph amended complaint[7] against the petitioners, containing twenty-three counts for the following state law causes of actions: common law assault, common law battery, outrageous conduct, three counts of intentional infliction of emotional distress, three counts of negligent infliction of emotional distress, malicious prosecution relating to the Department of Motor Vehicles, three counts of malicious prosecution, negligence, gross negligence, four counts of negligence in employment (employment, entrustment, retention, training, and supervision), and failure to intervene. The amended complaint also contained respondeat superior claims against the petitioners the City of Ranson and the City of Charles Town related to the allegations against the petitioner police officers.

In response to the respondent's amended complaint, the Charles Town petitioners and the Ranson petitioners filed separate motions to dismiss pursuant to West Virginia Rule of Civil Procedure 12(b)(6). Interestingly, the Ranson petitioners claimed immunity only under the Tort Claims Act, *see* W. Va. Code §§ 29-12A-1 to -18, which

---

[7] The original complaint was filed on September 24, 2021.

5

affords immunity in certain circumstances to political subdivisions and their employees. In contrast, the Charles Town petitioners first argued that they were entitled to immunity under the Tort Claims Act but then later argued that they were entitled to "qualified immunity" under this Court's body of case law developed in claims involving State agencies.

By order entered May 3, 2022, the circuit court partially granted the petitioners' motions to dismiss. Specifically, the court determined: 1) that the petitioner law enforcement officers were not entitled to "qualified immunity" because "the alleged actions of the officer defendants set forth sufficient details . . . to show that the Governmental Tort Claims Act under W. VA. CODE § 29-12A-5 (2002) *does not apply*[;]"[8] 2) that "the City and Chief Defendants are state actors and there is not an

_____

[8] The circuit court's analysis of "qualified immunity" tracked this Court's analysis in *Estate of Grove*:

> [W]henever a defendant raises the issue of qualified immunity in a motion to dismiss, the circuit court must look to our qualified immunity body of law and follow the steps this Court expressly has outlined to make the determination of whether qualified immunity applies under the specific circumstances of that particular case. Specifically, these steps include whether: (1) a state agency or employee is involved; (2) there is an insurance contract waiving the defense of qualified immunity; (3) the West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1 *et seq.* would apply; (4) the matter involves discretionary judgments, decisions, and/or actions; (5) the acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise

6

insurance contract that waives the immunity," and "the City of Charles Town, the City of Ranson, and each city's respective police department and police chief are entitled to qualified immunity from the Plaintiff's negligence claims, including separate claims for liability under theories of supervisory liability throughout the Complaint[;]" 3) that the petitioner Charles Town Defendant's Motion to Dismiss was granted "only to the extent of a failure to properly train as to Sgt. Spessert, Chief Kutcher, and the City of Charles Town, but not under the other theories of liability under Count II, Common Law Battery[;]" and 4) that the respondent was "entitled to allege claims of negligence and intentional torts from the same facts." (Emphasis added). It is from this order that the petitioners appeal.

## II. Standard of Review

In syllabus point five of *State ex rel. Grant County Commission v. Nelson*, 244 W. Va. 649, 856 S.E.2d 608 (2021), we held that

> [u]nder Rule 12 of the West Virginia Rules of Civil Procedure, a circuit court's denial of a motion to dismiss a complaint that is predicated on the statutory immunity conferred by the Governmental Tort Claims and Insurance Reform Act is an interlocutory ruling that is subject to immediate appeal under the "collateral order" doctrine.

> fraudulent, malicious, or oppressive; and (6) the State employee was acting within his/her scope of employment. *See generally A.B.*, 234 W. Va. 492, 766 S.E.2d 751.

244 W. Va. at 283, 852 S.E.2d at 783.

Similarly, we have held that "'[a] circuit court's denial of a motion to dismiss that is predicated on qualified immunity is an interlocutory ruling which is subject to immediate appeal under the "collateral order" doctrine.' Syllabus point 1, *West Virginia Board of Education v. Marple*, 236 W. Va. 654, 783 S.E.2d 75 (2015)." *Estate of Grove*, 244 W. Va. at 275, 852 S.E.2d at 775, Syl. Pt. 1. Further, "[w]hen a party, as part of an appeal from a final judgment, assigns as error a circuit court's denial of a motion to dismiss, the circuit court's disposition of the motion to dismiss will be reviewed *de novo*." Syl. Pt. 4, *Ewing v. Bd. of Educ. of Cnty. of Summers*, 202 W. Va. 228, 503 S.E.2d 541 (1998). Finally, the Court held in syllabus points one and two of *Cartwright v. McComas*, 223 W. Va. 161, 672 S.E.2d 297 (2008):

> "[This Court] may, sua sponte, in the interest of justice, notice plain error." Syl. Pt. 1, in part, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).

> "'"To trigger application of the 'plain error' doctrine there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syllabus point 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).' Syllabus Point 7, *Page v. Columbia Natural Resources, Inc.*, 198 W. Va. 378, 480 S.E.2d 817 (1996)." Syl. Pt. 12, *Keesee v. General Refuse Service, Inc.*, 216 W. Va. 199, 604 S.E.2d 449 (2004).

*Cartwright*, 223 W. Va. at 162, 672 S.E.2d at 298, Syl. Pts. 1 & 2. It is under the guidance of these standards of review that we proceed to address the issues before us.

8

### III.  Discussion

Our focus is on the law the circuit court applied in reaching its decision in regard to the immunities claimed by the petitioners. [9]  Immunity law can be difficult to understand under the best of circumstances, as it involves three separate and distinct legal analyses which apply to claims against three separate and distinct categories of entities and individuals.  *See infra* text and notes 11-13.  Where, as here, the analyses are conflated and the affected entities and individuals are not properly categorized, legal chaos ensues.  This situation could have been avoided in the instant case had the court followed a two-step analysis:  1) categorize the party claiming immunity; and 2) determine whether the party is entitled to immunity under the facts and circumstances presented. [10]

The first step is to properly categorize the party claiming immunity.  In this regard, there are three sources of immunity in our jurisprudence: constitutional or

---

[9] As previously indicated in *supra* note 4, it is unnecessary to address any of the petitioners' assigned errors.

[10] The framework we set forth herein, which focuses on a method for determining which type of immunity is applicable in a particular case, is offered as a means of simplifying the subsequent application of the law to the facts.  We acknowledge that our case law has not been a model of clarity in this respect.

"sovereign" immunity,[11] common law "qualified immunity,"[12] and statutory immunity as set forth in the Tort Claims Act.[13]  It is well established that that claims for both constitutional and common law qualified immunity are available only for the State, its agencies, officials, and/or employees.  *See* W. Va. Const. art. VI, § 35; *see also A.B.*, 234 W. Va. at 502; 766 S.E.2d at 761 ("In West Virginia, however, the Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 *et seq.,* is limited to political subdivisions and their employees and does not cover claims made against the State or its agencies."); *Estate of Grove*, 244 W. Va. at 283, 852 S.E.2d at 783 ("[W]e have developed a significant body of law in order to determine whether a state agency, a state employee, or both are entitled to be protected from suit by the doctrine of qualified immunity.").[14]

---

[11] The West Virginia Constitution article VI, section 35 provides for immunity of the State as follows:

> The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

[12] *See generally A.B.*, 234 W. Va. at 503-05, 766 S.E.2d at 762-64 (discussing the evolution of common law immunity afforded to "the State, its agencies, officials, and employees, as well as the policy implications attendant to governmental immunity, in an attempt to formulate a workable rule for State-level governmental and employee immunities.").

[13] *See* W. Va. Code §§ 29-12A-1 to -18.

[14] The circuit court determined that the petitioner police officers "were acting under the color of state law when the alleged torts occurred[,]" implicitly making them "state

Conversely, statutory immunity, as set forth in the Tort Claims Act, is available only to political subdivisions and their employees. The Tort Claims Act was the Legislature's response to this Court's abolition of common law qualified immunity first for municipalities,[15] and then for county commissions[16] and county boards of education.[17] In this regard, we invited legislative action in *Long,* noting that

> [f]or the foregoing reasons, we believe the rule of municipal government immunity from tort liability previously applied in this jurisdiction to be unsound and unworkable. In moving toward resolution of this problem we are acutely aware of the constraints of the doctrine of Stare decisis. Although, indeed, it would seem preferable for the Legislature to speak comprehensively on the subject, we do not wish to perpetuate

---

actor[s]." However, here there are no claims alleged in the amended complaint under 42 United States Code section 1983 where actions taken "under color of state law" would be relevant. Thus, the court's characterization of the officers as "state actors" in an attempt to place them within the framework of common law qualified immunity applicable only to the State, its agencies, officials, and/or employees defies the definitions of the Tort Claims Act discussed *infra* in greater detail.

[15] *See* Syl. Pt. 10, *Long v. City of Weirton*, 158 W. Va. 741, 214 S.E.2d 832 (1975) ("The [common-law] rule of municipal governmental immunity is now abolished in this State."), *superceded by statute as stated in Pritchard v. Arvon*, 186 W. Va. 445, 413 S.E.2d 100 (1991).

[16] *See* Syl. Pt. 2, *Gooden v. Cnty. Comm'n of Webster Cnty.*, 171 W. Va. 130, 298 S.E.2d 103 (1982) ("Common-law governmental immunity for county commissions is abolished. A county commission shall be liable, just as a private citizen, to members of the general public, for injuries proximately caused by the negligence of its employees performing their duties."), *superseded by statute as stated in Pritchard v. Arvon*, 186 W. Va. 445, 413 S.E.2d 100 (1991).

[17] *See* Syl., *Ohio Valley Contractors v. Bd. of Educ. of Wetzel Cnty.*, 170 W. Va. 240, 293 S.E.2d 437 (1982) ("Local boards of education do not have state constitutional immunity nor common law governmental immunity from suit."), *superseded by statute as stated in Moore ex rel. Knight v. Wood Cnty. Bd. of Educ.,* 200 W. Va. 247, 489 S.E.2d 1 (1997).

11

bad law of judicial origin pending the fortuity of action by the Legislature.

158 W. Va. at 783, 214 S.E.2d at 859

The Tort Claims Act was enacted in 1986. *See* W. Va. Code §§ 29-12A-1 to -18. The Legislature's stated purpose for this statutory scheme was to "limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such liability." *Id.* § 29-12A-1. Further, the Legislature defined exactly what it meant by a "political subdivision":

> "Political subdivision" means any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two, chapter sixteen of this code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

*Id.* § 29-12A-3(c). Further, an "employee" was defined as

> an officer, agent, employee, or servant, whether compensated or not, whether full-time or not, who is authorized to act and is acting within the scope of his or her employment for a political subdivision. "Employee" includes any elected or appointed

> official of a political subdivision. "Employee" does not include an independent contractor of a political subdivision.

*Id.* § 29-12A-3(a). "Municipality" was defined as "any incorporated city, town or village and all institutions, agencies or instrumentalities of a municipality." *Id.* § 29-12A-3(b). Finally, "State" was defined to mean "the State of West Virginia, including, but not limited to, the Legislature, the Supreme Court of Appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the State of West Virginia." *Id.* § 29-12A-3(e). The Legislature expressly provided that "'State' *does not include political subdivisions*."[18] *Id.* (emphasis added). Thus, if a party meets the statutory definition of a political subdivision or employee, it is entitled to assert a claim of statutory immunity under the Tort Claims Act.

---

[18] Following these statutory definitions, this Court has repeatedly recognized that "[t]he West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code § 29-12A-1 *et seq.*, obviously however, does not apply to claims against the State." *A.B.*, 234 W. Va. at 499 n.4, 766 S.E.3d at 758 n.4. This Court has also distinguished between State agency immunities and political subdivision immunity in other cases. *See State v. Chase Sec., Inc.*, 188 W. Va. 356, 358, 424 S.E.2d 591, 593 (1992) ("[W]e make a distinction between the immunity that is available to state executive officials, such as the three individuals involved in this case, and the immunity afforded public officials who are employed by political subdivisions under W. Va. Code, 29-12A-1, *et seq.*"); *Hess v. W. Va. Div. of Corrections*, 227 W. Va. 15, 18 n.6, 705 S.E.2d 125, 128 n.6 (2010) ("[T]he Court notes that the West Virginia Governmental Tort Claims and Insurance Reform Act ("the Act"), West Virginia Code §§ 29-12A-1 to -18 (2008), applies to "the political subdivisions of this State [,]" such as a county commission or municipality. W. Va. Code § 29-12A-2 and § 29-12A-3(c). By definition, the State of West Virginia is not considered a "political subdivision." W. Va. Code § 29-12A-3(e)("'State' does not include political subdivisions.").").

We may readily resolve the first step in our immunity analysis, as it is undisputed that all of the petitioners herein fall within the statutory definitions of a political subdivision or its employee set forth in the Tort Claims Act. *See* W. Va. Code § 29-12A-3. Thus, the circuit court's overarching error here was in analyzing the immunity issue based on the principles set forth in *Estate of Grove* – principles established to govern common law qualified immunity cases involving the State, its agencies, officials, and/or employees, *not* cases involving political subdivisions and their employees. *See* 244 W. Va. at 283, 852 S.E.2d at 783.

Having established that the sole framework for the immunity analysis in this case is set forth in the Tort Claims Act, we turn to the second step in the immunity analysis: whether the petitioners are entitled to statutory immunity under the facts and circumstances herein. *See, e.g.*, *C.C. v. Harrison Cnty. Bd. of Educ.*, 245 W. Va. 594, 600, 859 S.E.2d 762, 768 (2021) ("Governing our assessment of the propriety of the circuit court's dismissal of these two negligence claims, as well as the circuit court's decision to dismiss these claims in the first instance, is the West Virginia Governmental Tort Claims and Insurance Reform Act . . . , which 'limit[s the] liability of political subdivisions and provide[s] immunity to political subdivisions in certain instances[.]; W. Va. Code § 29-12A-1 (eff. 1986)."); *State ex rel. Town of Pratt v. Stucky*, 229 W. Va. 700, 735 S.E.2d 575 (2012) (applying only Tort Claims Act in determining that Town of Pratt was entitled to statutory immunity); *Beckley v. Crabtree*, 189 W. Va. 94, 428 S.E.2d 317 (1993) (applying

14

only the Tort Claims Act to analyze immunity claims advanced by a county sheriff and a county commission).

As the Court explained in *Randall v. Fairmont City Police Department*, 186 W. Va. 336, 412 S.E.2d 737 (1991),

[t]he basic structure [or framework] of the Act is as follows.

Under the Act a political subdivision is stated to be immune generally from liability for damages in a civil action brought for death, injury or loss to persons or property allegedly caused by any act or omission of the political subdivision. W. Va. Code, 29-12A-4(b)(1) [1986]. The Act lists seventeen specific types of acts or omissions covered by the tort immunity available under the Act to a political subdivision. W. Va. Code, 29-12A-5(a)(1)-(17) [1986]. . . .

The Act also immunizes an employee of a political subdivision from tort liability, unless his or her acts or omissions were manifestly outside the scope of employment or official responsibilities; or unless the employee's acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner; or unless any statute expressly imposes liability upon the employee. W. Va. Code, 29-12A-5(b)(1)-(3) [1986].

On the other hand, the Act recognizes the tort liability of a political subdivision for acts or *omissions* in five fairly broad situations, W. Va. Code, 29-12A-4(c)(1)-(5) [1986], including liability in tort for damages "caused by the negligent performance of acts by their [political subdivisions'] employees while acting within the scope of employment[,]" W. Va. Code, 29-12A-4(c)(2) [1986].[19] For these situations where liability attaches, the Act imposes a $500,000 limit of liability

---

[19] West Virginia Code section 29-12A-4(c) also sets forth other instances wherein a political subdivision's tort liability is recognized and subject to the specific immunities established in West Virginia Code section 29-12A-5(a).

15

for the noneconomic loss of any one person, W. Va. Code, 29-12A-7(b) [1986], and disallows punitive damages, W. Va. Code, 29-12A-7(a) [1986].

The Act explicitly provides that "[t]he purchase of liability insurance . . . by a political subdivision does not constitute a waiver of any immunity it may have pursuant to this article or [of] any defense of the political subdivision or its employees." W. Va. Code, 29-12A-16(d) [1986]. The liability insurance could be purchased by a political subdivision "with respect to its potential liability and that of its employees" under the Act. W. Va .Code, 29-12A-16(a) [1986].

Finally, the Act contains provisions regulating the costs and coverage of liability insurance available to political subdivisions. W. Va. Code, 29-12A-17 [1986].[20]

---

[20] West Virginia Code section 29-12A-18 provides for certain instances wherein the Tort Claims Act does not apply:

This article does not apply to, and shall not be construed to apply to, the following:

(a) Civil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability;

(b) Civil actions by an employee, or the collective bargaining representative of an employee, against his or her political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision;

(c) Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his or her employment;

(d) Civil actions by sureties, and the rights of sureties, under fidelity or surety bonds;

(e) Civil claims based upon alleged violations of the Constitution or statutes of the United States except that the

186 W. Va. at 341-42, 412 S.E.2d at 742-43 (footnotes omitted and footnotes added).

The plain error herein is that the circuit court failed to analyze the immunity claims in this case under the Tort Claims Act, which is the sole source of immunity applicable to the petitioners. [21] Consequently, we have no choice but to reverse and remand this case for further proceedings. We decline to provide what would be an advisory analysis of the respondent's claims, as that task is for the circuit court in the first instance.

provisions of section eleven of this article shall apply to such claims or related civil actions.

We note that where the Tort Claims Act is inapplicable, a common law qualified immunity analysis may be appropriate. For instance, in cases where federal claims are alleged under 42 United States Code section 1983, we have applied federal common law qualified immunity. *See, e.g.*, *Hutchison v. City of Huntington*, 198 W. Va. 139, 147-48, 479 S.E.2d 649, 657-58 (1996) (finding statutory immunity applied to all state law claims alleged therein and discussing federal claim alleged under 42 United States Code section 1983 and stating that "[p]ublic officials and local government units should be entitled to qualified immunity from suit under § 1983, or statutory immunity under W. Va. Code, 29-12A-5(a), unless it is shown by specific allegations that the immunity does not apply. *See State v. Chase Securities, Inc.*, 188 W.Va. 356, 424 S.E.2d 591 (1992)."); *see also City of Saint Albans v. Botkins*, 228 W. Va. 393, 398, 719 S.E.2d 863, 868 (2011) ("Our approach to matters concerning immunity historically has followed federal law due in large part to the need for a uniform standard when, as in the case before us, public officers are sued in state court for violations of federal civil rights pursuant to 42 U.S.C. § 1983."). As previously mentioned, there are no claims involving section 1983 in this case.

[21] We have no problem noticing plain error in this case. *See Cartwright*, 223 W. Va. at 162, 672 S.E.2d at 298, Syl. Pt. 1. The error in this case involves the circuit court's incorrect application of immunity law, which undeniably meets the requisite elements to establish plain error as it is an error "that is plain, and [] that affects substantial rights; and [] seriously affects the fairness, integrity, or reputation of the judicial proceedings. *See id*., Syl. Pt. 2.

17

It is incumbent on the court to examine each count of the respondent's amended complaint under the framework of the Tort Claims Act. [22] The court then must determine, based on the facts alleged, whether to grant or deny immunity to any of the petitioners on any claims, or whether additional factual development is needed.

## IV. Conclusion

For the foregoing reasons, the May 3, 2022, order of the Circuit Court of Jefferson County, West Virginia, partially granting the petitioners' motion to dismiss the respondent's amended complaint, is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

[22] "Rule 8(f) of the West Virginia Rules of Civil Procedure dictates that courts liberally construe pleadings so 'as to do substantial justice[,]'"*Mountaineer Fire & Rescue Equip., LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 520, 854 S.E.2d 870, 882 (2020), and so "'[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Syl. Pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Although the Court construes the factual allegations of the complaint, including all inferences arising therefrom, in the light most favorable to respondents, *Chapman,* 160 W. Va. at 538, 236 S.E.2d at 212, we are also guided by the principle that, "[i]n civil actions where immunities are implicated, the trial court must insist on heightened pleading by the plaintiff." *Hutchison*, 198 W. Va. at 149, 479 S.E.2d at 659. However, where "the information contained in the pleadings is sufficient to justify the case proceeding further," the motion to dismiss should be denied. *Id*. at 150, 479 S.E.2d at 660.